SLY *et al.*, *Appellants*, v. UNION DEPOT RAILROAD
COMPANY.

### Division Two, June 16, 1896.

1. **Railroad:** INFANT PASSENGER: NEGLIGENCE. In an action by parents for the death of their son, fourteen years of age, while attempting to get upon a moving street car as a passenger, they must show, to entitle them to recover, that the deceased was, at the time of the accident, in the exercise of that care and caution which might reasonably be expected from one of his age, experience, and intelligence.

2. ———: ———: ———. Whether a boy fourteen years of age was guilty of negligence in attempting, as a passenger, to get upon a moving street car, depended to some extent upon his experience, intelligence and the rate of speed at which the car was moving at the time; he would not be wholly absolved from the exercise of care in boarding the car while it was moving at a rate of speed of from three to seven miles an hour.

3. **Appellate Practice:** PERJURY: MISTAKE: IMPROPER VERDICT: NEW TRIAL: DISCRETION OF TRIAL COURT. Under Revised Statutes, 1889, section 2240, providing that where the trial court is satisfied that perjury or mistake has been committed by a witness, and an improper verdict occasioned thereby, and that the complaining party has a just cause of action or defense, it shall, on motion of the proper party, grant a new trial, the granting of a new trial is a matter of discretion with the trial court and its action on the motion will not be disturbed on appeal, unless an abuse of discretion is shown.

4. **Practice:** NEW TRIAL: IMPEACHMENT OF WITNESS: PERJURY. Affidavits that witnesses in a cause have testified differently in other cases of similar character only tend to impeach them and not to sustain a charge of perjury, and do not constitute ground for granting a new trial.

*Appeal from St. Louis City Circuit Court.*—HON. D. D.
FISHER, Judge.

AFFIRMED.

*C. P. & J. D. Johnson* and *Geo. S. Grover* for appellants.

(1) The court gave improper and erroneous instructions at the request of defendant. *Schepers v. Railroad*, 126 Mo. 665. (2) The plaintiffs should have been awarded a new trial in view of the extraordinary developments in this cause subsequent to the verdict. Sec. 2240, R. S. 1889, p. 577; *Hurlbut v. Jenkins*, 22 Mo. App. 572; *State v. Murray*, 91 Mo. 103; *State v. Wheeler*, 94 Mo. 254; *State v. Bailey*, 94 Mo. 316.

*Judson & Taussig* for respondent.

*First.* There is no error in the instructions of which plaintiffs can complain. The court submitted the issue of contributory negligence to the jury, and their verdict is conclusive. *Second.* The application for new trial on the ground of newly discovered evidence set forth in the affidavits was wholly insufficient, both in the averments and in the proof. (*a*) A new trial is never granted on newly discovered evidence tending only to discredit or impeach a witness. *Deer v. State*, 14 Mo. 348; *Boggs v. Lynch*, 22 Mo. 464; *Jackard v. Davis*, 43 Mo. 535; *Phillips v. Phillips*, 46 Mo. 607; *State v. Smith*, 65 Mo. 464; *State v. Rockett*, 87 Mo. 666; *State v. Meyers*, 115 Mo. 394; *State v. Sansone*, 116 Mo. 1; *State v. Howell*, 117 Mo. 307; *State v. Welsor*, 117 Mo. 570; *State v. Stewart*, 127 Mo. 290. Nor where the newly discovered evidence is merely cumulative in its character. *Mayor v. Burns*, 114 Mo. 432. The above rules have been adhered to even where the witness himself files affidavits contradicting his own evidence at the trial. *Holtz v. Schmitz*, 12 Jones & Spencer, 327; *People ex*

*rel. Maguire*, 2 Hun (N. Y.), 269. Motion for new trial on affidavits going to impeach the credit of witnesses ought never to be permitted: Kent, C. J., in *Duryea v. Dennison*, 5 Johnson, 298. "There would be no end of new trials if they were granted on new evidence which would impeach the character of a witness at the trial." *Shumway v. Fowler*, 4 Johnson, 424. It is therefore settled that a court will not set aside the judgment alleged to have been obtained by perjury unless the witness has been convicted of perjury, or his death since the trial has rendered his conviction impossible. *Dych v. Patton*, 3 Jones, Equity, 332; *Bunn v. Boyd*, 3 Johnson, 255; *Duryea v. Dennison*, 5 Johnson, 292; *Shumway v. Fowler*, 4 Johnson, 424; *Holtz v. Schmitz*, 12 Jones & Spencer, 327; *Warwick v. Bruce*, 4 M. & S. 140; *Thurtell v. Boumont*, 4 Bingham, 339. The alleged perjury or mistake of a witness, under the statute, only lies as ground for a new trial when the court is satisfied that an improper verdict for defendant was occasioned thereby. R. S., sec. 2240. There was no pretense of conforming to this requirement in plaintiff's motion, or the affidavits filed in support thereof. A witness can not be impeached even at the trial by contradicting his answers on collateral issues. *A fortiori* such collateral issues can not be tried on affidavits filed for the first time on application for new trial. But apart from all the foregoing considerations, the indentity of the witness Lowe, his presence at the accident, being the only point on which any attempt was made to attack his testimony, was conclusively demonstrated by the affidavits filed by the defendant.

BURGESS, J.—Plaintiffs who were, on the eleventh day of July, 1893, husband and wife, and the parents of Percy G. Sly, then about fourteen years of age, sue for damages on account of the death of their son, caused

by the alleged negligence of the servants and employees of defendant then in charge of its cars. The accident occurred in the city of St. Louis, where the case was tried. From a verdict and judgment in favor of defendant plaintiffs appealed.

The defendant company operates an electric line of cars from the center of the city to Tower Grove Park, and on the evening of the accident deceased boarded car number 151, down in the city to go to his home near said park. While on the way this car for some cause, not material, became disabled, and had to be pushed on by the next car (number 153) to the power house, where it was switched off, and the passengers transferred to the one last named.

By the disablement of said car, the one next succeeding it, number 153, and others still back of it, were delayed to such an extent as to cause a blockade, so that when 153 arrived at Gravois and Arsenal street station and switch, where a part of defendant's cars usually stop to switch and return to the city, it was ordered to discharge its remaining through passengers and return down town. The passengers for Tower Grove were instructed to take another through car. Deceased was one of the passengers for Tower Grove Park, and when through car number 157 came along he undertook to jump on ahead of others, who were endeavoring to take the car before it had reached its regular stopping place. This car had an open car, called a trailer, attached to it in the rear. Deceased had a basket on his right arm, and endeavored to jump on the front car as it passed along, by catching hold of the rear dashboard with his left hand, whereby he immediately swung between the front and rear car, and the rear car passed over him and injured him, from the effects of which he died within a few hours thereafter.

Witnesses on behalf of plaintiffs testified that just as deceased took hold of the dash board, the car gave a sudden movement or jerk forward. There was evidence on the part of defendant to the contrary. The witnesses also differed as to the speed of the train which varied from three to seven miles per hour. At the time of the accident the conductor was on the front platform of the trailer. When he saw deceased approaching the train he called to him to keep back, and motioned to him to do so, but he paid no attention to either. As soon as the conductor saw the danger the boy was in, he gave the danger signal, and the train was at once brought to a standstill, but it was too late. At the time of, and prior to the accident, the boy was in the employ of the Samuel C. Davis Dry Goods Company, and passed to and from his home to his work daily, on the electric street cars over the same line of road.

The court in behalf of plaintiff instructed the jury as follows:

"The jurors are instructed, that if they believe and find from the evidence that plaintiffs are husband and wife; that the deceased, Percy G. Sly, was, at the time of his death, the minor son of plaintiffs; that on or about the eleventh day of July, 1893, at the city of St. Louis, he was on one of the cars of defendant as a passenger for hire, for the purpose of being carried to a point on said defendant's road on Arsenal street beyond its intersection with Gravois avenue; that when said car, upon which he was such passenger, reached said Arsenal street at its intersection with Gravois avenue, the defendant's employees in charge of said car, directed the said Percy G. Sly and other passengers to leave the same and take passage on the next car following the said car, for the purpose of being carried to his said destination; that in pursuance of said direction, the

said Percy G. Sly left said car at or near the intersec-
tion of said Arsenal street with said Gravois avenue,
for the purpose of taking another car for his said desti-
nation; that while waiting at said point on Arsenal
street, two cars of the defendant passed without stop-
ping, and that the agent of defendant, in charge of the
second car which so passed, directed the said Percy G.
Sly and the other passengers, then and there standing
with him on said street, to take the next car following;
that the next car following, when it got near or oppo-
site to where the said Percy G. Sly stood upon said
Arsenal street, had its speed slackened to a slow rate as
if it was going to be stopped, for the purpose of permit-
ting the said Percy G. Sly and the other said passengers
to get upon the same; that the said Percy G. Sly there-
upon got upon the running-board of said car; that the
motorman, in charge of and running said car, knew, or
by the exercise of reasonable care might have known,
that the said Percy G. Sly had got upon the said car and
was then and there standing upon the running-board
thereof, but notwithstanding suddenly started the car
forward with sufficient force to throw the said Percy G.
Sly off his balance; that by reason of such sudden
starting of the car, the said Percy G. Sly was thrown
from his balance off of said car, and under the wheels
thereof, and thereby received injuries causing his death;
that the said Percy G. Sly was then and there in the
exercise of the same care as is customarily exercised by
persons of ordinary prudence, under like circumstances;
that then the jurors, if they so find the facts to be,
should find a verdict for plaintiffs; and if they so find
they will assess their damages at the sum of five thou-
sand dollars."

Over the objection and exception of plaintiffs the
following instructions were given for defendant:

"1. The court hereby instructs you that the ground of plaintiffs' suit against the defendant is an alleged negligence on defendant's part and that such negligence can not be presumed must be established by plaintiffs to your satisfaction by proof:

"Therefore, although you find that Percy G. Sly was injured while endeavoring to get on one of defendant's railway trains, yet that fact alone does not entitle plaintiffs to recover in the present suit, but before plaintiffs can recover any damages in this suit they are bound to prove to your satisfaction that the injury complained of was occasioned by the negligence of defendant's employees, and unless plaintiffs have so proven your verdict should be for the defendant.

"2. If you believe from the evidence that the deceased, Percy G. Sly, did not exercise the care and caution which might reasonably be expected from a person of his age, experience, and intelligence that the evidence shows him to have been at the time of the accident complained of, but that he himself, by his own negligent conduct, caused or contributed to cause the injuries which resulted in his death, and that defendant's servant in charge of the car by which he was injured could not by the exercise of a high degree of care have avoided the accident after they became aware, or by reasonable care would have become aware, of the danger to which the deceased exposed himself, then you should find a verdict for the defendant.

"3. In determining whether Percy G. Sly was guilty of negligence directly contributing to the accident which resulted in his death, you may take into consideration not only his age but also his previous experience in getting on and off street cars as the same appear from the evidence, and the confidence reposed in him by his parents as to his ability to take care of himself, and you are instructed that it was the duty of

the deceased to exercise the care and caution which might be expected from a person of his age, discretion, and experience, as the same is shown by the evidence.

"4. If you find from the evidence that the deceased's conduct in boarding a moving train was the sole cause of the accident and that defendant's servants in charge of the cars by which he was injured were free from negligence in the premises, both before and after danger became apparent, then your verdict should be for the defendant without reference to deceased's age or capacity.

"5. If you believe from the evidence that the direct cause of Percy G. Sly's death was not negligence on the part of defendant's employees but negligence of his own in trying to board an electric railway train while the same was in motion, then you should find a verdict for the defendant.

"6. If you believe from all the evidence in this case that the injuries which caused the death of Percy G. Sly were the result of a mere accident or misadventure and that the same were not caused by the negligence of either the deceased or the defendant, then you should return a verdict for the defendant."

After the rendition of the verdict in favor of defendant, plaintiffs filed their motion for a new trial alleging among other grounds, that "perjury or mistake was committed by witnesses for defendant."

In support of this ground for a new trial plaintiff introduced a large number of affidavits which relate entirely to the alleged attempted illegal procurement of the testimony of one James O'Connell, by Thomas C. Barron, claim agent for defendant. O'Connell did not testify at the trial. A number of affidavits were also filed by plaintiffs tending to show that John Low, who testified in behalf of defendant, was a professional witness for defendant in personal injury cases, and that he

was not on the cars at the time of the accident, and that he could not have seen it.

Counter affidavits were filed by defendant, tending to disprove the charge made in the motion.

The first point made by plaintiffs is that the court gave improper and erroneous instructions on the part of defendant. This contention is based on the assumption that according to defendant's instructions the attempt of deceased to board the car while in motion was negligence *per se*. We do not think any such deduction can be drawn from a fair and impartial reading of the instructions. Whether or not deceased was guilty of contributory negligence in trying to board the car while in motion depended to some extent upon his experience, intelligence, and the rate of speed at which it was then moving. That he was not wholly absolved from the exercise of care in boarding the car while it was moving at a rate of speed of from three to seven miles per hour, is, we think, too clear to admit of dispute. In *Ridenhour v. Cable R'y Co.*, 102 Mo. 270, it was held that the court could not, as a matter of law, declare a child nine years of age to be incapable of negligence, and that the standard of care required of a child is such reasonable care and diligence as characterize one of its experience and intelligence.

This is the rule universally announced by text writers and courts. And when defendant's instructions are considered together they simply required of deceased the exercise of that care and caution, which might be reasonably expected from one of his age, experience, and intelligence, and nothing more. The jury found that he did not exercise such care and caution and that by his own negligence, in trying to board the train while it was moving at the rate of speed that it was moving at that time he was guilty of negligence

which contributed directly to his injury. He was familiar with the movement of the cars, rode on them every business day, in going to his work and returning therefrom to his home. The instructions were warranted by the evidence and presented the case with seeming absolute fairness to the jury.

What has been said in no way conflicts with *Schepers v. Railroad*, 126 Mo. 665, but is in perfect harmony with that case.

We come now to that ground for a new trial in which it is alleged in the motion therefor, that "perjury or mistake was committed by witnesses for the defendant." Section 2240, Revised Statutes, 1889, provides that: "In every case where * * * the court is satisfied that perjury or mistake has been committed by a witness, and is also satisfied that an improper verdict or finding was occasioned by any such matters, and that the party has a just cause of action or of defense, it shall, on motion of the proper party, grant a new trial," etc.

Before a motion to set aside the verdict of a jury and grant a new trial on the ground that perjury has been committed can be sustained, the court in which the motion is made must be satisfied of the truthfulness of the charge, and that an improper verdict was occasioned thereby. But if the court is not satisfied of both of these things, then it logically follows that the motion should be denied. The granting of a new trial on such ground rests very largely in the discretion of the trial court, and unless it be made to appear that such discretion has been abused this court will not interfere.

It is inconceivable how anyone can read the conflicting affidavits filed in this case, and without more, become satisfied therefrom that perjury was committed by any witness for the defendant.

The affidavit of James O'Connell goes further perhaps toward sustaining the charge (and that is only indirectly) than any other, and he is shown, not only by the affidavits of others, but by his own, to be unworthy of belief from any standpoint. The affidavits tend equally as strong, if not stronger, to sustain the witnesses for defendant than they do to show that any of them committed perjury. That the court was not satisfied that perjury had been committed is very evident from its denial of the motion.

It has been held that a verdict obtained by perjury will not be set aside unless the witness has been convicted of perjury, or has died since the trial, and his conviction thus rendered impossible. *Dyche v. Patton*, 3 Jones' Eq. 332; Hilliard on New Trials [2 Ed.], 508. There is no pretense that any witness who testified for defendant has been convicted of perjury, or died since the trial of this cause.

Whatever witnesses in this case may have testified to in others, although of a similar character, has no tendency to sustain the charge of perjury in this. At most, such affidavits only tend to impeach the credit or character of the witness against whom made, and a new trial is rarely ever granted upon that ground. *Mayor of Liberty v. Burns*, 114 Mo. 426, and authorities cited.

Finding no error in the record the judgment is affirmed. GANTT, P. J., and SHERWOOD, J., concur.