## EMMA ARMSTRONG, Appellant, v. J. M. BATTERTON.

### Division One, March 7, 1924.

**CONVEYANCE:** Description: Monument and Distances. Where the deed conveyed a certain farm, and in the description named as the southeast corner of the farm a point on the bank of a slough, which had been definitely located years before on the north bank of the slough by a survey then made, and then proceeded to copy the courses and distances of that survey, the said point on the north bank as then located must be taken as the southeast corner of the farm and as the starting point, and a point 291 feet further south cannot be taken as the southeast corner simply because the calls for courses and distances in the survey would have carried the corner that much further south, and especially should this be so where the calls for courses and distances are manifestly erroneous because the survey based on them does not close.

Headnote: Boundaries, 9 C. J. sec. 127.

Appeal from Boone Circuit Court.—*Hon. David H. Harris,* Judge.

Affirmed.

*James E. Boggs* and *Paul M. Peterson* for appellant.

(1)  The rights of the parties of this litigation are determined by the survey of the county surveyor, S. P. Bewick.   The courses and distances set forth in this survey control, and according to the survey the court should have directed a verdict for the plaintiff, the appellant herein.   (a)   The reference to the north bank of an old slough in the deed to Emma Armstrong was descriptive and not locative, and was not made with the intent or purpose of the parties to the deed to fix the north bank of the old slough as a monument determining the location of the southeast corner.   9 C. J. 214, par. 128; 9 C. J. 216, par. 131; McIver v. Walker, 9 Cranch (U. S.) 178, 3 L. Ed. 694; Walter v. Garner, 258 Mo. 494, 511; Gross v. Golinsky, 106 Pac. 604; Runkle v. Smith, 133 S. W. 746; Meadows v. Michael, 120 N. Y. Supp. 319; Stith v. Post, 232 S. W. 985; Coke v. Gordon, 231 Mo. 645.   (b)   All the testimony, including that on the part of the defendant, fails to locate the north bank of the old slough as a definite point on March 1, 1911, and at the time of the trial, so that the same cannot be located or determined as a monument.   Since by oral testimony the north bank could not be located with definiteness and certainty, the courses and distances in the deed control, and the southeast corner could be determined only from such courses and distances as was done in the Bewick survey.   Gilbert v. Parrott, 182 S. W. 859; McNichol v. Flynn, 153 N. Y. Supp. 308, 310; Albert v. City of Salem, 65 Pac. 1068; Coombs v. West, 115 Me. 489, 2 A. L. R. 1424; Warner v. Southworth, 6 Conn. 471.   (c)   Survey made by Bewick, the official surveyor, determines the rights of the parties to this litigation.   The deed did not refer to the slough bank as a monument, and the oral evidence failed to locate a slough bank as a monument.   Under this state of the proof the county surveyor's survey was prima-facie correct and plaintiff was entitled to recover.   Sec. 12719, R. S. 1919; Clark v. McAtee, 227 Mo. 152; Watson v. Matson, 183 Mo. App. 298.

*E. C. Anderson* and *D. G. Watts* for respondent.

The rights of the parties are determined by the location of the southeast corner of the Emma Armstrong tract. The evident intention of the parties was to locate this southeast corner on the north high bank of the old slough as a monument determining the location of the southeast corner. (1) The evidence locates the north bank of the old slough at a substantially definite point, and by suit in ejectment the plaintiff can only recover on the strength of her own title, and the burden was upon her to show title to the strip of land she claimed. (2) The deed located the southeast corner as being on the north high bank of an old slough, and the undisputed evidence is, that the courses and distances given in the measurements and the survey made by Quinn, are erroneous, and for that reason must be rejected and monuments called for must be relied upon. Johnson v. Bowlware, 149 Mo. 151, 156; Kronenberger v. Hoffner, 44 Mo. 185, 192; Cooley v. Warren, 53 Mo. 166, 168; Clamorgan v. Ry. Co., 72 Mo. 139; Myers v. St. Louis, 82 Mo. 367, 373; Smith v. Land & Improv. Co., 117 Mo. 438, 444; Harding v. Wright, 119 Mo. 1, 9; Burnham v. Hitt, 143 Mo. 414, 420; Hubbard v. Whitehead, 221 Mo. 672; Walker v. Garner, 258 Mo. 494.

RAGLAND, J.—Ejectment for a strip of land two hundred and ten feet wide at the west end, one hundred and fifty-two and one-half feet wide at the center, two hundred and ninety-one feet at the east end and sixty-one and eighty-five hundredth chains long, containing seventeen and nine-tenths acres.

The McBaine Land Company, a corporation, is the common source of title. On the first day of March, 1911, it was the owner of a large body of land bordering on the Missouri River, in Boone County. On that date it conveyed to the plaintiff a tract described in its deed to her as follows:

"Three hundred sixty-eight and a half acres, parts of sections eighteen and nineteen, township forty-seven, range thirteen, known as the Marion Gilmore farm, more

particularly described as follows: Beginning thirteen and eighty-five hundredth chains east of the northwest corner of said section 18, thence east on the north line of said section thirty-three and twenty-hundredths chains to the west bank of Perche Creek, thence down the west bank of said creek as follows: south twenty-five degrees east fifteen chains, south seventeen degrees east eleven and fifty-hundredths chains, south twenty-one degrees east twenty-four and fifty-hundredths chains, south twenty-seven degrees east eighteen and seventeen hundredths chains, south forty-six and one-half degrees east ten chains, south thirty-five degrees east eleven and fifty-hundredths chains to the southeast corner of said Gilmore tract on the north high bank of an old slough, thence with said north bank south eighty-six degrees west sixty-one and eighty-three hundredths chains to the southwest corner of said Gilmore tract, thence due north forty-five chains to a stone, thence north eighty-one degrees west ten and seventeen-hundredths chains to a stone, the southwest corner of the Gilmore high lands, thence north thirty-six and fifty-hundredths chains to the beginning ''

On May 31, 1913, the McBaine Land Company by two deeds conveyed three hundred and sixty-four acres, more or less, lying immediately south of the land it had theretofore conveyed to plaintiff, to M. R. Conley and defendant Batterton, in the proportions of one-fourth and three-fourths respectively. Thereafter Conley by deed conveyed his undivided one-fourth interest to the defendant. In setting forth the boundaries of the land conveyed each of the three deeds last mentioned described the beginning point and gave the first call for course and distance in this language:

''Beginning at a point on the north bank of an old slough, being the southeast corner of the Marion Gilmore land as described in a deed to Emma Armstrong from the McBaine Land Company, recorded in Book 132 at page 483 of the Boone County, Missouri, deed records and being the seventh point from the beginning in the description of said Marion Gilmore land in said deed,

thence south 85 degrees west 64 chains to the Missouri River.''

Prior to the institution of this suit defendant had cleared and put in cultivation the north part of his land and had built a wire fence along the line which he claims is his north boundary. In June, 1921, plaintiff caused a survey of her land to be made by S. P. Bewick, County Surveyor of Boone County. The following is a copy of the plat of that survey:

Bewick testified that in making the survey he followed the notes of a previous survey which was of record in his office, and that his survey conformed to the calls for courses and distances in the deed from the Mc-Baine Land Company to the plaintiff, except in one instance. The call in the deed for the direction of the south line from the southeast corner was "south eighty-six degrees west," while the course called for by the recorded notes was "south eighty-five degrees west." It further appears from his testimony that he located the southeast corner from the calls for courses and distances only and without reference to the additional specification that it was "on the north high bank of an old slough." The south line extended "south eighty-five degrees west" from the southeast corner as located by him lies south of defendant's fence. The land lying between that line and the fence, represented on the plat by a broken line, is the strip in suit. In 1884, Robert Carter and Marion Gilmore acquired title to a body of accreted land lying immediately north of the Missouri River and west of Perche Creek. In 1893 they divided the land, Carter taking the west half and Gilmore the east half. Before exchanging the deeds by which the partition was effected they had the land surveyed. The survey was made by P. S. Quinn, a private surveyor, and no record was made of it at the time. Subsequently, in 1896, Quinn prepared from his field notes a full statement of the survey, accompanied by a map, and the survey as thus shown was approved by the County Surveyor of Boone County and recorded as an official survey, Survey No. 4555. In that survey the calls with reference to the southeast corner and the south boundary of the land that was allotted to Gilmore are as follows:

"Set in center of first slough where the same forms a junction with the Perche Creek, thence N. 2 degrees 20' W. 2.08 chains to (20), the S. E. corner of Marion Gilmore land, thence S. 85 degrees W. with and along the south of line of Marion Gilmore land and Robert Carter land 74.84 chains to (21)."

The slough referred to in the call was 30 chains wide at the west end where it came in from the river; where it entered Perche Creek, it was 274 feet wide and from 12 to 15 feet deep.  Quinn stated that at the time he made his survey the slough was not filled with water, "but it was clean cut and well marked."

Bewick's survey in 1921 of what had been the Gilmore land was neither more nor less than an attempt to re-trace the survey made by Quinn in 1893, and Bewick in making the survey was accompanied by Quinn. Both surveyors declared that at that time it was impossible to determine with any certainty the location of what had been "the north high bank" of the slough in 1893, and for that reason they had been compelled to confine themselves to the calls for courses and distances in locating the southeast corner of the Gilmore land.  The slough had completely filled up and its former site was covered with a field of growing corn.  It appears from the evidence as a whole, however, that just south of defendant's fence there was a marked depression in the surface of the ground.  This depression was approximately 290 feet wide and extended eastward to Perche Creek.  In the line of the fence and a short distance west of the west bank of the creek there was a large cottonwood tree—three feet or more in diameter.  The depression at its lowest point was three or four feet lower than the ground upon which the tree stood, the surface gradually sloping down from the tree southward.  Across on the south side of the depression the rise to the general level was more pronounced, having the distinct appearance of a bank.  In this connection certain portions of the testimony of Bewick, who was called as a witness by plaintiff, are particularly relevant:

Direct Examination: "Q.  State whether or not point '7' on this survey, whether or not that was on a high bank?  A.  It is on a high bank. . . ."

Cross-examination: "Q.  I will ask you whether or not you found evidence of an old slough down there south of that fence?  A.  We crossed the fence going south; we

went down a slight grade to a spot where it was much muddier than it was anywhere else. It was after a light rain.

"Q. I will ask you whether in your opinion you crossed an old slough in making that survey? A. Yes.

"Q. And you said that you set your extreme south corner there on a high bank? A. Yes, sir.

"Q. I will ask you if that high bank was north or south of the ground that you determined in your own mind was an old slough? A. Yes, it was south."

With reference to the depression just described, Quinn insisted that it could not be accepted as identifying with any degree of certainty the location of the slough in 1893, because the flood waters of the Missouri River in 1903 had "altered the general surface of that land entirely."

Gilmore and Carter and Carter's son were called as witnesses by defendant. Each testified in substance that he was familiar with the old slough and its surroundings as they were in 1893; that since that time the *locus in quo* had been under his more or less continuous observation; that while the slough had gradually filled during the intervening years it had never shifted its position and its banks were still distinctly traceable; that the big cottonwood tree was on the north high bank of the slough; and that Quinn, whom they assisted in making the survey in 1893, set the stake marking the southeast corner of the Gilmore land just east of the tree and near the west bank of the creek.

It will be noted from the plat that Bewick after running the courses and distances called for in the deed to plaintiff was compelled to run north 53 degrees and 1 minute west 3.17 chains in order to close his survey. In other words the point he reached on the last call was not the beginning, but was about two chains east and one south of it.

At the close of all the evidence plaintiff asked an instruction directing a verdict for her. This was refused. The following excerpts from instructions given

by the court of its own motion define the issues of fact submitted to the jury:

". . . the court instructs you that unless the location of the north high bank of the old slough mentioned in evidence as a monument as same existed in 1893 at the time of the original survey by the county surveyor in 1893 can now be definitely ascertained and determined by you from all the evidence in this case then you shall disregard the call for such monument in the description of the land in the deeds and accept the courses and distances given in said deed and the survey introduced in evidence, and in which event your verdict must be for the plaintiff for the possession of the 17.9-acre tract of land now in controversy. . . . if the jury find from the evidence that the present location or position of the north bank of said old slough can now be definitely fixed and ascertained and that the same had been shown by the evidence to be substantially the same at the date of the institution of this suit and now as it was at the time of the original survey in 1893, then your verdict herein should be for the defendant."

The verdict was for the defendant. From the judgment entered in accordance therewith plaintiff prosecutes this appeal.

The determination of the boundary line between appellant's land and that of respondent depends upon the location of the southeast corner of her land; and that location in turn depends upon which of the elements of the description in the deed from the McBaine Land Company to appellant be given control in its ascertainment. That is the whole controversy. The trial court held with respondent that "the north high bank of an old slough," as it existed in 1893, was intended by the parties as a monument to mark the southeast corner of the land conveyed, and that as such it is paramount to the calls for courses and distances. Appellant's position is so clearly and forcefully set forth in the brief of her learned counsel that we can not do better than quote from it:

"Appellant contends that the language of the deed does not refer to the north high bank of an old slough as a monument. The deed shows conclusively that it was intended to convey the property by metes and bounds as therein set out. McBaine Land Company on the date of the deed owned the entire tract of land which included the farms now owned by respondent and appellant.

"The language of the deed does not trace courses and distances to the north bank of an old slough but 'to the southeast corner of said Gilmore tract *on* the north high bank of an old slough.' This we submit is not language that fixes the north high bank as a monument or stopping point. The north high bank is nothing more than a slope and is not a well-defined point. The language of the deed recognizes this fact because it fixes the point on the bank and not the bank as the point. To trace courses and distances to a point on the north high bank of an old slough is not an attempt to fix the definite location of the point by the bank. The language itself rebuts any such idea. It would not be contended, we take it, for a moment if a course is traced to a point on the south side of a bluff or the south side of a hill or the north side of a slope that the bluff or the hill or the slope was referred to by the surveyor or by the scrivener in drawing the deed as a monument. Such reference is incidental only as an attempt to describe the general location of the point, and the point itself can only be located by reference to courses and distances. . . .

"It is hardly conceivable that the parties to the deed . . . intended to fix as the southeast corner of the land an indefinite point located on the north bank of an old slough. It must be recalled that this deed was written in 1911, and according to the most favorable view to the defendant of all the evidence in the case it cannot be contended that the slough bank had a well-defined point at that time. The court should seek the intention of the parties to that deed and endeavor to fix as the southeast corner of the Armstrong land the point that the parties had in mind when the deed was written.''

Appellant is unquestionably right in saying that the intention of the parties is the thing to be sought. [Myers v. St. Louis, 82 Mo. 367; Schultz v. Lindell's Heirs, 40 Mo. 330; Sullivan v. Hill, 112 S. W. (Ky.) 564.] If that can be ascertained without resorting to arbitrary rules of construction so much the better. The language of the deed describing the land, heretofore quoted, when read in the light of the facts and circumstances attending its use, makes it manifest that the McBaine Land Company intended to convey to appellant out of its larger holding the land "known as the Marion Gilmore farm," precisely that, nothing more and nothing less. The grantor not only said in so many words that it was conveying the land "known as the Marion Gilmore farm," but in bounding its grant it described one point as "the southeast corner of said Gilmore tract," another as "the southwest corner of said Gilmore tract" and still another as "the southwest corner of the Gilmore high lands." Now the description of the boundaries found in the deed was not obtained through a survey made at the time. On the contrary the parties adopted the description which they found in the recorded survey of the Gilmore land made by Quinn. Quinn testified that that survey was "written in the deed." There can be no doubt, therefore, but that the parties intended that the boundaries set forth in the deed should be identical with those that were actually run and marked off on the ground by Quinn in 1893. Consequently the language of the call, "*to* the southeast corner of said Gilmore tract," should be held to mean, to the southeast corner of said Gilmore tract *as established by the Quinn survey*. Where did Quinn locate the corner? Let us follow the footsteps of the surveyor. "Set in center of . . . slough where same forms a junction with Perche Creek (the slough at this point was 274 feet wide), thence N. 2 degrees 20' W. 2.08 chains (137.28 feet) to . . . the S. E. corner of Marion Gilmore land." This fixed the corner "on the north high bank" twenty-eight hundredths of a foot from the edge of the water when the slough was bank full. It

was also "down the west bank of said creek," as designated by another call. It is very clear therefore that the southeast corner of the Gilmore land as established by Quinn in 1893 was "on the north high bank of an old slough," notwithstanding the calls for courses and distances alone would have carried it 291 feet further south (Johnson v. Bowlware, 149 Mo. 451; Burnham v. Hitt, 143 Mo. 414); and as already suggested this was the corner that the parties must have had in mind and consequently the one called for in the deed.

It is next urged by appellant that even if the parties intended that the north high bank of the old slough should mark the southeast corner of the land, such bank can no longer be located with definiteness and certainty, and for that reason the call for courses and distances must be resorted to in determining the location of the corner. The calls for courses and distances are manifestly erroneous because a survey based upon them does not close. Notwithstanding, they would have to be accepted as furnishing not only the best but the only evidence of the location of the corner, if the site of the north high bank of the old slough as it existed in 1893 could not be determined with certainty. [Browning v. Atkinson, 37 Tex. 633.] But there was very substantial evidence tending to show that when Bewick made his survey in 1921 the bank was still plainly discernible, and that it occupied the identical place that it did in 1893. The jury's finding on this evidence is conclusive.

Certain criticisms are leveled at the instructions given by the court. The questions raised by them, however, have been disposed of by what has already been said. The jury issues were properly submitted; the judgment should be affirmed. It is so ordered. All concur.