Andrew C. KOENIG and Eunice T. Koenig, Appellants,

v.

Jerry SKAGGS, G. O. Skaggs, Marion Mackey and Frank Mackey, Respondents.

No. 51098.

Supreme Court of Missouri,

Division No. 1.

Feb. 14, 1966.

Motion for Rehearing or to Transfer to Court En Banc Denied March 14, 1966.

Paul E. Williams, Bowling Green, for appellants.

Charles Clayton, Clayton & Mattern, Clarksville, Philip Schaper, Jr., Bowling Green, for respondents.

HENLEY, Judge.

Plaintiffs appeal from a judgment (1) for all defendants on plaintiffs' petition for damages for cutting timber on land plaintiffs claim to own, and (2) for defendant, Marion Mackey, on his counterclaim to

quiet title in him to the land from which the timber was cut.

Plaintiffs' petition alleges that they are owners of a 40 acre tract of land described as the southeast quarter of the northeast quarter of section 36, in township 53 north, of range 1 east, in Pike County, located in what is known locally as the Annanda bottoms south of Clarksville; that on or about June 17, 1963, the defendants, Jerry and G. O. Skaggs and Frank Mackey, as agents and employees of defendant, Marion Mackey, willfully and forcibly entered upon and cut and removed timber from plaintiffs' land, and in doing so damaged other standing timber; that the cutting and damaging of this timber was malicious and in wanton disregard of plaintiffs' rights. Plaintiffs prayed for actual damages of $2,900 and punitive damages of $50,000.[1] Defendants' answer was a general denial coupled with a counterclaim by defendant, Marion Mackey, in two counts. The first count is in ejectment alleging that this defendant is entitled to the possession of a 40 acre tract of land adjoining and lying immediately south of plaintiffs' land, defendant's land being described as the northeast quarter of the southeast quarter of section 36 "as far north as an east and west line that is formed by Schaeffers' lev[ee]." The second count is to quiet title to the land last described in Marion Mackey. The issues made by plaintiffs' petition, the answer and count 1 of the counterclaim were tried before a jury. At the close of all the evidence the court sustained plaintiffs' motion for a directed verdict as to count 1 of the counterclaim and overruled the motion as to count 2, holding that the issues raised by this count are "a matter for determination by the Court rather than the jury." The issues made by plaintiffs' petition and the answer were submitted to the jury and resulted in a verdict for defendants. After entering judgment for defendants in accordance with this verdict, count 2 of the counterclaim was submitted to the court,

without a jury. The result of that submission was a judgment quieting title to the land last described in the defendant, Marion Mackey. Plaintiffs' motion for new trial was overruled and, as stated, they appeal from the judgment.

This court has jurisdiction because the amount in dispute, to-wit: $52,900, exceeds the sum of $15,000. Article V, § 3, Constitution of Missouri, V.A.M.S. § 477.040, RSMo 1959, V.A.M.S.

It appears from plaintiffs' brief (and during oral argument in this court the parties agreed) that plaintiffs are the owners of the north 40 acres described as the southeast quarter of the northeast quarter and that defendant, Marion Mackey, is the owner of the south 40 acres described as the northeast quarter of the southeast quarter; that the primary issue for determination by the jury was the location of the boundary line between their respective tracts. The area in question is approximately 600 feet long north and south for the full width, east and west, of the respective 40 acre tracts. There is no claim of title to this area by adverse possession by either plaintiffs or defendants, each apparently claiming only to the true line.

The evidence is conflicting as to the location of the boundary line between the two tracts. Plaintiffs contend that their south boundary line is established by running a line due west from a stake or pipe found at what they claim to be the southeast corner of their 40 acre tract. Defendants contend that this pipe is 600 feet south of the true corner; that the boundary line between the two tracts is established by an east-west levee known as Schaeffer's levee located approximately 600 feet north of the line claimed by plaintiffs.

James Fleming, a registered and licensed surveyor, testified that he and his assistant surveyed this area at plaintiffs' request in late August, 1963, for the purpose of locating plaintiffs' south boundary line; that

---

1. This is not an action for treble damages under § 537.340, RSMo 1959, V.A.M.S.

Aaron Hemphill pointed out to him a stake or pipe claimed by plaintiffs to be the southeast corner of their tract and, after checking this pipe against an aerial photo of the area, he ran the line due west to establish plaintiffs' south boundary; that he could not find a government corner marker from which to start his survey; that the pipe pointed out to him by Mr. Hemphill was his starting point; that he did not make a physical measurement of the land itself to verify this corner, but relied on the aerial photograph to verify what Mr. Hemphill had told him. Aaron Hemphill testified that he had been acquainted with this general area and the boundary line of various tracts of land in the area since about 1931; that the southeast corner of plaintiffs' land was fixed by a pipe driven in the ground in 1941 or 1942 as a result of a survey; that the purpose of that survey was to establish the north boundary line of an 80 acre tract he owned approximately three-fourths of a mile east of plaintiffs' land; that he participated in that survey; that he could not find this pipe when he went to the area in August, 1963, because treetops and brush were piled up in the area, but that he did point out to the surveyor, Fleming, the general area where the pipe should be found. Others, some of whom also participated in the 1941 or 1942 survey, testified that the pipe referred to by plaintiffs and Fleming was the southeast corner of plaintiffs' land; that there were signs of an old strand or strands of barbed wire attached to trees west of the pipe indicating a previous marking of this as the south boundary line; that this wire was sunk into the trees indicating growth around the wire; that a part of the recent timber cutting by defendants was north of this line.

Joe Tadlock testified that he surveyed this area in June, 1963, for defendant, Marion Mackey, for the purpose of determining the north line of the 40 acre tract owned by Mr. Mackey; that he has been familiar with the area since 1929; that he has been a surveyor since 1933, and has a civil service rating as such with the federal government, but is not registered with or licensed by the State of Missouri as a surveyor; that the point of beginning of his survey was the northeast corner of section 36, which corner he located by reference to "a huge established post" on a line with a stone previously determined by the county surveyor to be on the north line of section 36; that a fence on a line with this post and stone has been accepted by property owners in that area as the north line of section 36; that he measured on the ground from his starting point to a point one-half mile south, turned due west and ran his line to the county road west of the southwest corner of plaintiffs' land where he found recognized corner markers coinciding with the east-west line he had run; that these markers were an old elm tree and Schaeffer's east-west levee; that on the evening before trial he returned to the line he had established and walked south to a point where timber had recently been cut; that this point was about 300 feet south of the line; that the line he established is approximately 600 feet north of the line fixed by surveyor Fleming. Luther Schamback testified that he had been familiar with this area since 1923; that Schaeffer's levee corners at the southwest corner of the Koenig land and runs generally east and west; that recent timber cutting in that area was south of the levee line. William Beauchamp, who had known the lands now owned by plaintiffs and defendant, Marion Mackey, since about 1900, and Mike Guber, the owner of other land in section 36, and K. C. Patton, former owner of both tracts testified that the boundary line between the two tracts is Schaeffer's levee. Defendants testified that they did not cut timber north of the line established by surveyor Tadlock, but had in fact stopped approximately 300 feet south of that line.

Plaintiffs assign as error (1) the admission of evidence, (2) the giving of an instruction, (3) failure to grant a new trial on the ground of newly discovered evi-

dence, and, (4) that the verdict was against the weight of the evidence.

 The primary issue in this case was the location of the boundary line between plaintiffs' land and Marion Mackey's land. Practically all efforts of the parties at the trial were directed toward proof establishing the line at a point consistent with their respective beliefs as to its true location. As stated above, the evidence on this issue was conflicting. There was substantial evidence from which the jury could find that the line was delineated by Schaeffer's levee, approximately 600 feet north of the point at which plaintiffs' evidence indicated the line was located. The jury's finding on this evidence is conclusive. Armstrong v. Batterton, 303 Mo. 220, 260 S.W. 80, 83 [2]; McDaniels v. Cutburth, et al., Mo., 270 S.W. 353, 360; Gee v. Sherman, et al., 221 Mo.App. 121, 293 S.W. 789, 790 [7, 8].

 The first point briefed by plaintiffs is that the court erred in the admission of testimony of the witnesses, Joe Tadlock, one of the surveyors, and Marion Mackey, one of the defendants. Plaintiffs contend that Joe Tadlock was not qualified to testify as an expert and should not have been permitted to give an opinion as an expert, because he was not registered with and licensed by the State of Missouri as a surveyor. In this point they assert that: "The mere fact of his offering himself as an expert witness, i. e., a surveyor was a misdemeanor under the law of Missouri * * *." See § 344.020, RSMo 1959, V.A.M.S. We note that plaintiffs' objection at the trial was: " * * * I will object to this witness' testimony as a surveyor." The court's ruling was: "All right. We will let the jury pass on the weight to be given his testimony." Immediately prior to this objection, the witness Tadlock had testified to facts pertaining to his education, training and experience as a surveyor, and his knowledge of the area, from which the court, in its discretion, could determine that he was quali-

fied to aid the jury in forming its opinion as to the location of the boundary line. The jury of course had the right to believe or disbelieve his testimony. Considering the witness' testimony as to his qualifications, we are of the opinion the court did not abuse its discretion in permitting him to testify. Stephens v. Kansas City Gas Co., 354 Mo. 835, 191 S.W.2d 601, 606–607 [7–11]; Christian v. Jeter, Mo., 287 S.W.2d 768, 770 [4, 5]; McDaniels v. Cutburth, et al., supra, 270 S.W. 1. c. 360 [6]; Gee v. Sherman, et al., supra, 293 S.W. 1. c. 790 [6]. Merely because Tadlock was not licensed by the state as a surveyor did not disqualify him from relating to the jury what he had found, through the use of his specialized training and experience, to be the location of the true boundary line. See Von Eime v. Fuchs, 320 Mo. 746, 8 S.W.2d 824, 826–827 [9].

 Plaintiffs contend that the court erred in permitting the defendant, Marion Mackey, to testify as an expert without qualifying him as such. The testimony to which plaintiffs have reference is Mackey's identification and location on plaintiffs' exhibit 4 (an aerial photograph) of an area of plaintiffs' land the witness had said he knew to have been logged within the past 25 years. Earlier in his testimony he had identified and located on the aerial photograph, without objection, portions of his own land that had been logged. Plaintiffs' objection (if in fact it be an objection) was: "I would say that counsel is leading the witness and asking for an expert conclusion without laying a foundation." This objection or remark was made after the witness had identified and located on the photograph the area in question; no motion was made to strike the testimony or to instruct the jury to disregard it; the witness was permitted to continue to identify and locate other landmarks on the photograph without objection. The court did not err in admitting this testimony. Whether to permit this witness to identify and locate the area in

question was within the sound discretion of the trial judge. We hold that he did not abuse that discretion.

■■ Plaintiffs' next point is that the court erred in giving instruction No. 6 which told the jury that if the alleged trespass of defendants was not characterized by wanton and malicious acts their verdict should be for defendants on the issue of punitive damages. For obvious reasons we need not further describe the instruction or relate their objections to it. The jury returned a verdict for defendants and, of course, did not reach the question of actual or punitive damages. There can be no recovery of punitive damages if there are no actual damages. Adelstein v. Jefferson Bank and Trust Co., Mo., 377 S.W.2d 247, 252 [4]. Error, if any, in this instruction on punitive damages was not prejudicial to plaintiffs, the jury having found for defendants on the question of liability. Frank v. Wabash Railroad Co., Mo., 295 S.W.2d 16, 23 [16].

The last point briefed is that the court erred in refusing to grant plaintiffs a new trial on the ground of newly discovered evidence. We quote the assignment in their motion for new trial on·which this point is based: "Since the rendition of verdict and judgment in this case there has been discovered additional and more reliable corner markers and check points by the same surveyor." In the argument portion of their brief plaintiffs state that this evidence was given to the trial judge; that "the availability of the evidence is demonstrated by letters from witness surveyor Fleming in the file and although not startlingly different from the testimony produced by him at the trial more significant and convincing check points and corner markers have been discovered by witness Fleming since the trial."

■■ We need not set out all the principles governing the granting of new

trials because of newly discovered evidence. They are defined and clearly discussed in Womack v. McCullough, Mo., 358 S.W.2d 66, 68–69 [2–6] and cases therein compiled, and Young v. St. Louis Public Service Co., Mo., 326 S.W.2d 107, 111–113, [5–7], and cases therein compiled. Among those principles are these: (1) that it was not owing to the want of due diligence that the evidence was not secured sooner; (2) that it is so material that it would probably produce a different result if the new trial were granted; (3) that it is not cumulative only; and, (4) that the affidavit of the witness himself should be produced, or its absence accounted for. This assignment of their motion is devoid of even a bare suggestion that they used any diligence to discover this new evidence; there is not even the suggestion that it *might possibly* produce a different result if a new trial were granted. There is no allegation in the motion that it is not cumulative only; on the contrary, the words of the assignment and the above-quoted portion of their argument clearly disclose that it is in fact cumulative only. The motion is not verified, nor is it supported by affidavit of the witness or its absence accounted for. The new evidence plaintiffs state was "given" to the trial judge does not appear in the record before us. Plaintiffs have not brought themselves within the requirements laid down for granting a new trial because of newly discovered evidence.

■ The matter of granting a new trial on the ground of newly discovered evidence rests to a large extent within the sound discretion of the trial judge and his ruling on that issue should not be disturbed, except for clear abuse. No abuse of discretion appears in this record.

The judgment is affirmed.

All concur.