**ATLAS CORPORATION, Appellant,**

v.

**MARDI GRAS CORPORATION,
Respondent.**

No. WD 53631.

Missouri Court of Appeals,
Western District.

Submitted Sept. 4, 1997.

Decided Feb. 24, 1998.

Don A. Peterson, Kansas City, for appellant.

Douglas J. Patterson, Leawood, KS, for respondent.

Before SMART, P.J., and LOWENSTEIN and LAURA DENVIR STITH, JJ.

PER CURIAM:

Atlas Corporation ("Atlas") appeals a judgment of the trial court in favor of Mardi Gras Corporation ("Mardi Gras") on Atlas' petition for unlawful detainer and breach of contract. Atlas claims that the judgment in favor of Mardi Gras was based upon perjured testimony and the trial court abused its discretion in refusing to grant a new trial on the basis of this newly discovered evidence. Atlas also claims that the trial court erred in failing to award it attorneys' fees because the terms of

its lease with Mardi Gras provided for attorneys' fees in the event of default and breach.

## FACTUAL BACKGROUND

On May 4, 1995, the parties to this action, Atlas and Mardi Gras, entered into a lease whereby Atlas would lease property to Mardi Gras located at 1600 E. 19th Street in Kansas City, Missouri. The lease required Mardi Gras to maintain liability coverage and hazard insurance:

11. *Indemnification and Insurance:* Without limiting Lessee's liability under this Lease, Lessee agrees to indemnify and to hold Lessor harmless from any and all claims for damage or injury asserted against Lessor for any reason whatsoever as a result of the use of the demised premises and any adjoining property facilities by Lessee, and its agents, employees, representatives and invitees and as a result of damage to any property of Lessee or those claiming through or under Lessee.

Lessee shall during the entire term hereof and the extensions granted hereunder keep in full force and effect a policy of public liability insurance with respect to the demised premises in the business operated by Lessee in which both Lessor and Lessee shall be named as parties covered thereby, or provide equivalent protection to Lessor and in which the limits and liabilities shall not be less that One Hundred Thousand Dollars ($100,000.00) per person or each accident occurrence for bodily injury, One Hundred Thousand Dollars ($100,000.00) for property damage. Lessee shall furnish Lessor with a certificate or certificates of insurance or other similar evidence that such insurance is in force during the full term of this Lease or any extensions granted hereunder.

12. *Hazard Insurance:* At all times during the continuance of the term of this Lease or any extension thereof, Lessee shall at Lessee's own expense, keep all improvements forming part of the real estate now or thereafter or within leased premises to the extent obtainable, insured against loss by standard fire and extended coverage and vandalism and malicious mischievous in an amount equal to their full insurable value which such insurance shall be placed in a solvent incorporated insurance company licensed to do business in the State of Missouri. Lessee agrees and covenants to pay promptly when due the premium or premiums for such insurance. Each and every such policy or policies of insurance on any of the improvements forming a part of the real estate now or thereafter on the within leased premises shall provide that the loss, if any, shall be paid to the Lessor and Lessee as their respective interests may appear. All such policies of insurance shall be deposited with the Lessor.

The lease also states that in the case of default, the "Lessee agrees to indemnify Lessor against all loss of rent and other payments of damages, including but not limited to Lessor's attorneys fees, if any, which Lessor might incur by reason of such default...."

Mardi Gras experienced difficulty in obtaining coverage on the building. Both types of insurance, liability and hazard, were cancelled at various times over the course of the lease, but were reinstated until finally cancelled in January 1996. Marguerite Walker, a representative of Atlas, testified at trial that she was notified of the cancellation of the insurance and the fact that it would not be reinstated. On January 8, 1996, she wrote on behalf of Atlas to notify Mardi Gras that the insurance had been cancelled and that under the terms of the lease, insurance must be maintained at all times for the lease to continue. Counsel for Atlas wrote to Mardi Gras on January 25, 1996, requesting that the insurance be reinstated. On March 8, counsel for Atlas wrote to Mardi Gras asking that Mardi Gras furnish some proof of insurance. In April, Med James, Inc., an insurance agency, provided counsel for Atlas with a certificate showing that Mardi Gras had obtained public liability insurance as required by the lease. The certificate did not indicate that Mardi Gras had obtained hazard insurance.

On May 16, counsel for Atlas sent a letter to Mardi Gras informing Mardi Gras that it was electing to terminate the lease because of the failure of the company to supply proof

of insurance to Atlas. The letter demanded immediate possession of the premises. Mardi Gras did not surrender the premises to Atlas. Atlas filed suit for breach of contract and unlawful detainer on May 31, 1996.

At trial in October, 1996, Alex Thomas, the owner and president of Mardi Gras, testified that, after some difficulty, he was able to procure insurance for the property on February 6, 1996. Mr. Thomas explained that he was having difficulty obtaining insurance because of the age and condition of the building, as well as the fact that Mardi Gras had little insurable interest in the building as it was not the owner. He testified that the certificate of insurance, dated September 12, 1996, showed $100,000.00 in liability coverage, $10,000.00 of fire and extended coverage on the building, and $25,000.00 contents coverage. The effective date of the insurance shown on the September 12, 1996 certificate is February 5, 1996. He testified that the insurance company had issued a certificate in February and had put Kansas City, Missouri on the certificate mailed to Atlas instead of Kansas City, Kansas, Atlas' mailing address. On cross-examination, counsel for Atlas produced the certificate of insurance issued to Atlas in April, 1996, which did not show any proof of fire and casualty insurance. Thomas had no explanation for the lack of a description of hazard insurance on that certificate. After he had stepped down from the witness stand, Mr. Thomas found the actual fire insurance policy and was recalled to identify it. The policy showed $10,000.00 of hazard insurance on the building and $25,000.00 on the contents.

The trial court found in favor of Mardi Gras. It found that under the terms of the lease, Mardi Gras had thirty days to cure the default occasioned by the cancellation of its insurance. It further found that Mardi Gras had cured the default as to both liability and hazard insurance because such insurance was in effect as of February 5, 1996. The trial court also held that Mardi Gras had not deposited the insurance with Atlas, but that this breach of the lease was not material. The trial court entered its judgment on September 26, 1996.

On October 21, 1996, Atlas filed a motion requesting that the judgment be set aside, or in the alternative, that it be granted a new trial. Its motion centered on the premise that Mr. Thomas had perjured himself when he testified that there was hazard insurance on the premises effective February 5, 1996. The motion related that counsel for Atlas, in the course of discovery in an unrelated action, learned that Mr. Thomas had not requested property and casualty insurance coverage until September 10, 1996 and that the endorsement adding such insurance was not effective until September 11, 1996. The court overruled the motion. Atlas appeals.

In its first point, Atlas contends that the trial court erred in refusing to grant a new trial in light of newly discovered evidence establishing that Atlas properly terminated its lease with Mardi Gras. Atlas argued that while Mardi Gras may have obtained public liability insurance in April, Mardi Gras did not obtain hazard insurance until September, 1996, approximately a month before trial. Specifically, Atlas argues that Mr. Thomas perjured himself in testifying that there was hazard insurance on the premises on February 5, 1996. The details of Mr. Thomas' alleged perjury came to light when counsel for Atlas obtained information, in the course of discovery in another action, that Mr. Thomas had not requested fire insurance coverage until September 11, 1996. Joseph Kalesz, the designated representative for Med James, Inc. (the insurance agent issuing the liability and fire insurance policies) was deposed by counsel for Atlas. In the course of the deposition, Mr. Kalesz was asked about Mardi Gras' application for insurance:

Q. Turning your attention to Deposition Exhibit 2, would you tell me when a policy was first applied for by Mardi Gras Corporation?

A. Policy information was brought to us, Med James, Incorporated, on January 29th to develop a quotation for the insured.

Q. For what type of insurance?

A. Commercial general liability.

Q. And was a commercial general liability policy ultimately issued?

A. Yes.

Q. And when was that?

A. February 5th, 1996.

Q. Was an application made at that time for any extended fire or property casualty insurance?

A. No.

Q. Now, this insurance we're discussing, did it apply to a premises known as 1600 East 19th Street in Kansas City, Missouri?

A. Yes.

Q. At any time was an application or request made to change the policy to cover that premises for fire or so called extended coverage and property casualty?

A. Yes.

Q. And when was that made?

A. 9–11–96.

Q. Is there a record in your file that reflects what occurred in making that request?

A. Yes.

*    *    *    *    *    *

Q. (By Mr. Peterson) Referring your attention to the records of Med James, Incorporated, and in particular that page that's been marked as Deposition Exhibit 2A, could you tell me what that record is?

A. It's a documentation of a telephone conversation between one of our underwriting staff and the agent requesting that coverage be bound on 9–11–96 for $10,000 building and $25,000 of contents on this insured, with a lien holder as Bank IV in Lenexa.

Q. And who was the agent that made the request?

A. It was Alex Thomas, Alex Thomas & Associates.

Atlas also contends that the policy identified at trial by Mr. Thomas to prove that there was fire insurance on the property did not include the policy changes page which identified Mardi Gras as the only named insured on the fire policy. This evidence, it contends, warrants a new trial.

**Perjury**

Atlas seeks a new trial on the grounds of perjury. It is extremely rare for an appellate court to find it proper to review a trial court denial of a new trial on grounds of perjury. *See Sly v. Union Depot Ry. Co.,* 134 Mo. 681, 36 S.W. 235, 238 (1896); *Humfeld v. Langkop,* 591 S.W.2d 251, 254 (Mo. App.1979). An appellate court almost inevitably lacks resources in a case such as this for deciding whether perjury in fact occurred. To conclude that perjury necessarily occurred, and that the trial court abused its discretion in failing to order a new trial, we would have to view the deposition testimony of Mr. Kalesz as conclusive—that he could be neither mistaken, nor inaccurate for some other reason, nor dissembling. For this reason, there is some authority for the proposition that a new trial should not be granted on grounds of perjury unless there has been a conviction of perjury or unless a prosecution has been thwarted by the death of the alleged perjurer. *Sly,* 36 S.W. at 238. Atlas cites *Wilson's Estate v. Wilson,* 164 S.W.2d 73 (Mo.App.1942), in support of its argument that a new trial should have been granted on the grounds of perjury. In *Wilson's Estate,* the appeals court upheld the trial court's discretion in *granting* a new trial. Here, however, the trial court exercised its discretion to deny a new trial. In view of the wide discretion allowed the trial judge, *Wilson's Estate* is of little value to Atlas as precedent. Because we find Atlas' arguments and authorities unpersuasive, we decline to grant a new trial on grounds of perjury.

**Newly Discovered Evidence**

Atlas argues that the evidence obtained after trial also constitutes newly discovered evidence, and contends that the trial court should have granted a new trial on grounds of newly discovered evidence.

The question of whether to grant a new trial on the grounds of newly discovered evidence also lies within the sound discretion of the trial court. *Koenig v. Skaggs,* 400 S.W.2d 63, 68 (Mo.1966). We will not reverse that decision unless we find that the trial court clearly abused that discretion. *Id.* This court, in *Higgins v. Star Elec., Inc.,* 908

S.W.2d 897, 903 (Mo.App.1995) discusses six elements that must be proven in order for a new trial to be granted: (1) the evidence must have come to the knowledge of movant since the trial; (2) due diligence would not have discovered the evidence sooner; (3) the new found evidence must be so material that it would probably produce a different result; (4) the evidence must not be cumulative; (5) an affidavit of the witness must be produced or the absence of such an affidavit accounted for; and (6) the object of the evidence is not impeachment of the character or credit of the witness. Motions for new trial are regarded with disfavor. *Executive Jet Management & Pilot Serv., Inc. v. Scott*, 629 S.W.2d 598, 610 (Mo.App.1981). The grant of such motions is regarded as an exception; as a rule, they are denied. *Id.* Motions for new trial on grounds of newly discovered evidence are entertained reluctantly, examined cautiously and construed strictly. *Id.*

*Pearce v. Rogers*, 15 S.W.2d 874 (Mo.App. 1929) is a case cited by Atlas where the reviewing court did reverse a trial court denial of a new trial. The court in *Pearce* found that affidavits contradicting the testimony of the plaintiff as to a financial transaction raised new facts and convinced the court that "if that testimony had been before the jury in the trial, the probabilities are very strong that a different result would have been reached." *Id.* at 876. In addition to the fact that *Pearce* was a jury trial (and this case was not), another distinguishing factor in *Pearce* is that *Pearce* preceded the development of standards such as the six elements set out in *Higgins,* 908 S.W.2d at 903, governing the appropriateness of granting a new trial.

■ In this case, a key issue is whether due diligence on the part of Atlas would have discovered the evidence (Kalesz' testimony) sooner. At trial, after Mr. Thomas testified and offered the September, 1996, certificate of insurance showing both hazard and liability insurance effective in February, 1996, At-las produced another certificate issued by Med James, dated April, 1996, indicating that Mardi Gras had obtained public liability insurance as required by the lease, but no hazard insurance. The question asked by counsel indicates that the certificate was mailed directly to Atlas' counsel by Med James in April, 1996. Thus, Atlas had notice long before trial that Mardi Gras had obtained public liability insurance. The lease also required hazard insurance "to the extent obtainable," and the evidence was clear that Mardi Gras had difficulty obtaining hazard insurance in any substantial amount (the amount Mardi Gras ultimately obtained was $10,000 as to the structure, and $25,000 as to contents).[1] Atlas, as a named insured, would have had a right to the insurance information, and could have telephoned Med James before trial to determine whether, and when, Mardi Gras had obtained hazard insurance. Atlas failed to demonstrate to the trial court that due diligence would not have discovered this information earlier. The trial court had the right to presume that the surprise could have been avoided. The trial court could reasonably have concluded that due diligence would have resulted in disclosure of such information prior to trial. Consequently, we hesitate to say that the denial of a new trial was an abuse of discretion. We deny Point I.

### ATTORNEYS' FEES

■ In its second point, Atlas claims that the trial court erred in failing to award it attorneys' fees where the lease established Mardi Gras was responsible for such fees in the event of default. The lease provides that "Lessee agrees to indemnify Lessor against all loss of rent and other payments of damages, including but not limited to Lessor's attorneys fees, if any, which Lessor might incur by reason of such default. . . ." This language is found in paragraph 21 of the lease, entitled "default" which addresses the lessee's failure to pay rent or to "promptly and strictly" comply with other terms of the

1. The testimony of the Mardi Gras principals indicated that they did not understand that the insurance policy was required to show Atlas as an additional named insured on the hazard coverage. (Mr. Thomas said that one reason it was difficult to obtain hazard insurance was that Mardi Gras did not have much of an insurable interest because it was just a tenant.) Had Atlas talked to Med James before trial, Atlas would also have learned that Atlas was not a named insured as to the hazard coverage.

lease after written demand by lessor. We note that the demand letter from Atlas did not demand that the insurance policies be deposited, but rather requested proof of insurance in the form of a certificate. Also, we note that the action was brought to enforce the provision of the lease related to obtaining insurance coverage, not to enforce the provision related to the depositing of copies of insurance. The trial court found that Mardi Gras was not in breach of the lease requirements relating to the provision of insurance coverage. The court found that the failure of Mardi Gras to deposit copies of its insurance policies with Atlas was a breach of the lease, but was not a material breach. We cannot say the trial court erred in this determination. *Intertherm, Inc. v. Structural Systems, Inc.*, 504 S.W.2d 64, 67 (Mo.1974), (lessor not entitled to forfeiture of the lease, and restitution of the premises, where the lessee failed to deliver copies of insurance policies to the lessor as required by the lease). In any event, the action brought by Atlas was not brought to compel compliance with a requirement that policies be deposited, but that insurance be obtained. In view of the fact that Atlas did not prevail in its action for unlawful detainer, we cannot say that the court erred in denying attorney fees to Atlas.

## CONCLUSION

The judgment is affirmed.