**Howard VOSS and Juanita Voss, Respondents,**

v.

**Lucas C. WALL and Gwendolyn Wall, Appellants.**

No. 38099.

Missouri Court of Appeals, St. Louis District, Division Four.

Jan. 17, 1978.

Donald Rhodes, Bloomfield, for appellants.

Hux & Green, Jim S. Green, Sikeston, for respondents.

ALDEN A. STOCKARD, Special Judge.

In this case, tried before the court without a jury, the defendants have appealed from the judgment in favor of plaintiffs on their petition and against defendants on their counterclaim. We affirm.

Plaintiffs leased 891 acres of farmland from defendants for the year 1972. By the terms of the agreement, plaintiffs were to pay to defendants as rent "one-third of the proceeds received from all crops grown on said farm during period of said lease," and defendants were to "pay one-third of the

costs of all fertilizers and chemicals used in the production of the crops * * *." In their petition plaintiffs alleged that defendants owed them $2,561.78 as their share of the expenses incurred during 1973 which they refused to pay.

Defendants filed a general denial to plaintiffs' petition. They also filed a counterclaim in four counts. In Count I defendants alleged that "in the year of 1972" defendants "leased to plaintiffs" certain land, and that "by the terms of said farm lease" plaintiffs "were to deliver to defendants one-third of the crops harvested from the [farm] to the Advance MFA Grain Elevator or any other place designated by the defendants, with any hauling expense beyond Advance to be at the defendants' expense," and that they made arrangements to have their one-third share of the soybeans stored in storage bins and so notified plaintiffs, but that plaintiffs refused to take defendants' share of soybeans to those storage bins. They also alleged that plaintiffs hauled some of the beans from the leased premises without having them weighed at Advance and refused to account for them. Defendants prayed for an accounting, and that they recover the loss sustained by them because all the beans were not weighed at Advance and because plaintiffs' share was not stored.

By Count II defendants sought damages in the amount of $10,000 because during the year 1972 plaintiffs permitted noxious weeds to grow and did not operate the farm in an efficient and husband-like manner.

By Count III defendants sought "double the yearly rental value" from plaintiffs on the theory that they had given timely notice to terminate the lease at the end of 1972, and plaintiffs held over during 1973.

By Count IV defendants alleged that while wrongfully holding over, plaintiffs planted, cultivated, and harvested 80 acres of soybeans and 620 acres of milo, and that the soybeans were sold to the MFA Exchange at Advance, and defendants have not received payment for the soybeans or any part thereof. Defendants also alleged

that more soybeans and milo were harvested than plaintiff had reported, and they sought an accounting to determine the amount of soybeans and milo harvested and sold, and the price received.

Attached to a pleading of each party was an unsigned copy of what each claimed to have been the terms of the lease for 1972. The copies are identical except the one attached to plaintiffs' pleading provided for automatic renewal of the lease from year to year unless either party gave written notice to the other that it be terminated "on or before the 1st day of October * * *" while the date in the copy attached to defendants' pleading was "the 30th day of October."

On October 25, 1972, defendants mailed to plaintiffs a written notice, which was received by plaintiffs, that the "lease shall be terminated * * * and will not be renewed for a subsequent year, 1973, or year thereafter." Additional facts will be set forth in the discussion of the issues.

The trial court entered findings of fact that (1) the parties entered into a written farm lease for the year 1972, and that the lease was the one attached to plaintiffs' pleading which provided that the lease should run from year to year unless written notice of termination was given before October 1; (2) defendants' notice of termination was given on October 25, 1972, which was not timely to terminate the lease for 1973, but operated only to prevent the lease from being effective for the year 1974 and thereafter; (3) defendants are indebted to plaintiffs in the amount of $2,561.78 for their share, according to the terms of the lease, for the cost of the fertilizers and chemicals used in 1973 for the production of the crops on the land; (4) the parties settled between themselves for all income and expenses for the year 1972, and neither party is entitled to recover from the other for that year; (5) plaintiffs farmed the property according to the lease agreement and did not allow noxious weeds to grow and defendants suffered no damage in that respect; (There is no point on this appeal pertaining to this finding or to Count II of

the counterclaim. No further mention of either is necessary); (6) plaintiffs sold all the milo grown on the farm in 1973 to Monarch Feed Mill at Dexter and the proceeds were properly divided between the parties; and (7) the parties have deposited with the clerk of the court a check from MFA Exchange in the amount of $1,930.72 which represents the proceeds from the sale of all soybeans grown by plaintiffs in 1973 on defendants' land, and defendants' share. is $643.58. The court then off-set the $643.58 against the $2,561.78 and entered a net judgment against defendants under plaintiffs' petition for $1,918.20.

The first two points of appellants turn on the issues of whether there was a valid written lease for the year 1972 which provided for an earlier notice of termination than October 25, 1972, and if so, whether the notice of termination that was given was timely.

Appellants' first point is directed to the judgment on plaintiffs' petition, and they assert the trial court erred in that plaintiffs "were not in lawful possession of [defendants'] land during the year 1973" because defendant had given "timely written notice terminating the [plaintiffs'] tenancy and there was no agreement between the parties for [plaintiffs] to lease [defendants'] land for the year 1973."

■ The argument under this point ignores the express finding of the trial court that the "parties entered into a written farm lease" for the year 1972 which would automatically be renewed unless a written notice of termination was given before October 1. Nothing is advanced as to why that finding should not be controlling of this point. They only urge that after having received written notice "more than 60 days before the end of the year to surrender possession * * * prior to January 1, 1973 * * * the [plaintiffs] chose to hold over and wrongfully and unlawfully occupy and cultivate [defendants'] farms during the year 1973." They then assert that "having established there was no agreement between the parties for [plaintiffs] to remain * * * it necessarily follows that

there could be no agreement in which [defendants] were to pay any portion or had any legal obligation to pay any portion of the expenses * * *." They cite only *Millhouse v. Drainage District No. 48 of Dunklin County,* 304 S.W.2d 54 (Mo.App. 1957), but that case holds only that a tenant who holds over does not have an interest for which compensation must be paid when the property is taken or damaged for public use. The whole argument begs the question of whether plaintiffs were holding over, or whether the lease for 1972 was automatically renewed for 1973 because timely notice of termination was not given. The burden to establish that the trial court's finding was erroneous was on the defendants and they have failed to do so.

By their Point II appellants assert that the trial court erred in entering judgment for plaintiffs on Count III of the counterclaim because (a) plaintiffs' tenancy "for the year 1972 had been terminated by [defendants'] written notice which [plaintiffs] received more than 60 days before December 31, 1972; " and (b) the agreement pertaining to the year 1972 was verbal, there was no "written agreement abrogating Section 441.080," RSMo 1969, and the parties had "not agreed to nor even discussed the possibility of [plaintiffs] occupying [defendants'] land during the year of 1973," and therefore defendants were entitled "to double the annual fair rental value of their lands for the year 1973."

As with their first point, defendants again ignore the express finding of the trial court that the "parties entered into a written farm lease" for the year 1972 which would automatically be renewed unless a written notice of termination was given before October 1. The only possible recognition of this finding is the bare assertion in the point that "The evidence * * * did not support the trial judge's finding against [defendants] on Count III of their counterclaim."

In argument defendants quote testimony of Mr. Voss that he did not know if his wife signed the lease for 1972, that he did not "reckon we ever signed it," that he did not

know if he signed the lease because "there is too many written out," and that he did not have a signed copy. However, Mr. Wall testified that he received a copy of a lease from plaintiffs that was signed by them, and that he and his wife then signed the lease and returned it to plaintiffs. He further stated that the document that had the four signatures was the one that had the provision that notice of termination had to be given by October 30. However, before the end of 1972 defendants filed suit against plaintiffs. In the petition in that case it was alleged that they "had leased" to plaintiffs the land in question for a term of one year "all as set forth in the attached Exhibit 'A', which Exhibit 'A' is incorporated into this petition as fully as if set forth in length herein." The exhibit attached to that petition was a copy of a lease in which there was a requirement that notice of termination be given before October 1. Defendants' attorney who filed that suit testified that he obtained the unsigned copy of the lease from plaintiffs' attorney who stated that the parties had the signed copy. Toward the end of the trial the court asked, "What is the defendants' position? Is it their position that there is a lease or there is not a lease?" After some discussion, defendants' counsel stated: "Our position is there is a lease in existence for '72," but that "there is no written lease for '73." The court declared a recess so defendants could talk to counsel "and find out what your position is." After the recess defendants announced that "our position is that there was no written lease for the year '72 or '73."

It is evident that there is conflicting evidence as to whether there was a written lease, and if so, what date was therein provided for the notice of termination. Our review is pursuant to Rule 73.01(3), and that has been construed to mean the decree of the trial court "will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erronsously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

We are of the opinion that there is substantial evidence to support the trial court's finding, and that the finding is not against the weight of the evidence. However, we do not base our decision as to this point alone on this determination.

Another matter deserves mention. Defendants admit that there was an oral lease for the year 1972, but they claim that since it was oral it was from year to year and could be terminated by giving a 60 day notice as provided in § 441.050 RSMo 1969. During 1973 plaintiffs cultivated and harvested a crop of milo and caused to be paid to defendants as rent $15,620.90 as their one-third share of the proceeds received from the sale of the milo. They also cultivated and harvested soybeans and agreed that defendants were entitled to one-third of the proceeds from the sale of the crop. Defendants refused to accept the payment, not because they claimed plaintiffs were unlawfully on the land, but apparently because they believed that plaintiffs had harvested more soybeans than they reported. "The cases generally hold that if, after the expiration of a lease, the tenant pays rent and the landlord accepts the payme.it, the lease is extended," and proof of the acceptance of rent by the landlord is evidence of his consent to a renewal. 49 Am.Jur.2d Landlord and Tenant § 1144. Also when the original lease was for one year, which defendants admit the 1972 lease was, the general rule is that the extended term is for another term for one year unless there is proof that the consent was for a month-to-month basis or some other period. 49 Am. Jur.2d Landlord and Tenant § 1139. See the Annotation entitled "Landlord's consent to extension or renewal of lease as shown by acceptance of rent from tenant holding over," 45 A.L.R.2d 827. See also *Snowden v. Dawdy,* 343 S.W.2d 197 (Mo.App.1960); *State ex rel. State Highway Commission v. Demarco,* 445 S.W.2d 379 (Mo.App.1969); *Butz v. Butz,* 13 Ill.App.3d 341, 299 N.E.2d 782 (1973).

In this case the terms of the agreement for 1972, whether oral, or written and unsigned, provided that plaintiffs should pay to defendants "as rent one-third of the proceeds received from all crops grown on said farm during period of said lease." Plaintiffs paid to defendants, and defendants accepted as partial payment of the rent for the year 1973, one-third of the proceeds received from the sale of the milo grown on the land and harvested in 1973. Plaintiffs admit that defendants were entitled to one-third of the proceeds from the sale of the soybeans grown on the land, which they say was $643.58. Defendants claim they are entitled "as rent" to one-third of the proceeds from the sale of the soybeans, but they claim that more is due them than plaintiffs tendered.

Accepting defendants' contention that there was an oral lease of the land for the year 1972 with the terms thereof being those set forth in the copy of the lease attached to their pleading, and that plaintiffs wrongfully held over after the termination of the one year, the acceptance as rent of one-third of the proceeds from the sale of milo constituted substantial evidence from which we find that defendants consented to a renewal of the lease on the same terms for the year 1973.

Defendants' Point III asserts that error resulted in denying them relief under Count I of their counterclaim in which they sought to recover damages because plaintiffs did not place defendants' share of the soybeans produced in 1972 in storage.

In the point and in argument defendants ignore the finding of the trial court that the parties had "settled up for all income and expenses for the * * * year 1972." This finding is supported by the evidence. In addition, assuming that defendants are not precluded from recovery under Count I because of that settlement, the evidence does not support defendants' contention. At most, defendants' evidence was that Mr. Wall made inquiries concerning storage but did not complete the arrangements, and did not instruct plaintiffs to haul the soybeans to any particular place. In that event they were to be hauled to the Advance Grain Elevator, and that is what plaintiff did.

Defendants' final point is that the trial court "abused its discretionary authority" in denying them relief in Count IV of their counterclaim in which defendants sought an accounting to determine the quantity of milo and soybeans harvested and sold. They assert that "no evidence [was] offered by the [plaintiffs] that they had ever accounted to the [defendants] for the number of bushels of grain harvested from [defendants'] land during the year 1973."

■ First, the burden of proof as to Count IV of the counterclaim was on the defendants, not the plaintiffs. Second, plaintiffs' evidence was to the effect that all the milo grown and harvested was sold to Monarch Feed Mills, Inc. at Dexter, Missouri, and that defendants had been paid one-third of the price received, and that all the soybeans grown and harvested were sold to the MFA Exchange at Advance, Missouri, and that defendants were entitled to one-third of the amount received. In view of this evidence, a fact issue was presented which was resolved by the trial court, and in doing so there was no abuse of its discretion.

Included in the point, more as a reason in support of the point rather than a separate assignment, is the assertion that the trial court erred in failing to grant a new trial because of newly discovered evidence. The motion was based on an affidavit of Troy Cureton in which he stated that during 1973 he "helped harvest crops grown by Howard Voss on farms located west * * * and north of Advance, Missouri," and that "two truckloads of grain harvested from the aforesaid farms during the 1973 harvest season were hauled to and unloaded at Cape Girardeau, Missouri."

Rule 73.01 provides that in cases tried without a jury a party may, not later than 15 days after the entry of judgment, file a motion for new trial or a motion to amend the judgment, or both. Rule 78.01 provides that "On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact or make new findings, and direct the

entry of a new judgment." Rule 78.05 provides that when any after-trial motion is based on facts not appearing of record, affidavits may be filed which shall be served with the motion, but depositions and oral testimony may be presented in connection with after-trial motions. In this case a "new trial," as such, would not have been appropriate. The relief requested should have been for the court to open the judgment and take additional testimony.

■ The courts have long viewed motions for a new trial on the ground of newly discovered evidence with disfavor and grant them as an exception and refuse them as a rule. *Davis v. Illinois Terminal Railroad Company*, 326 S.W.2d 78, 86 (Mo.1959). We are of the opinion that in the interest of bringing litigation to a close the same basic principles should apply to a motion to open a judgment on the basis of newly discovered evidence, but admittedly the impact of an opening of the judgment in a nonjury case is by no means as severe as granting a new trial in a jury case. The opening of a judgment because of newly discovered evidence is a matter properly within the sound discretion of the trial court, and the issue before us is whether under the circumstances in failing to do so there was an abuse of discretion.

■ In *Gehner v. McPherson*, 430 S.W.2d 312 (Mo.App.1968), the requirements to be met before a new trial may be granted are set forth, and we consider those requirements to be applicable to a motion to amend or open the judgment. We need not enumerate those requirements, but it is sufficient to say that there was an inadequate showing of due diligence to obtain the evidence and the affidavit does not affirmatively show that the testimony of Troy Cureton would have been admissible over an objection based on hearsay.

Mr. Wall testified he did not know Troy Cureton or that he was an employee of plaintiffs. However depositions were taken, defendants claimed all the soybeans were not taken to Advance, and this evidence, now described as newly discovered,

obviously was readily discoverable. The affidavit simply states that Troy Cureton helped "harvest crops" on farms located north and west of Advance, Missouri, and that two "truckloads of grain," not soybeans, were taken to Cape Girardeau. The affidavit does not state that the crops were harvested on land of defendants rented by plaintiffs or that the affiant took the grain to Cape Girardeau. The basis of the affiant's information is not shown. From the affidavit he may have heard this from someone else.

Because the relief sought is extraordinary, and because of its impact on an orderly judicial process, the affidavit in support of the motion must be complete and show that the alleged newly discoverable evidence would be admissible, particularly when the witness is not produced at the hearing on the motion. We cannot, under the circumstances of this case, hold that there was a clear abuse of discretion, particularly when the specific relief sought was a "new trial" and not to open the judgment and hear additional evidence as authorized by Rule 78.01.

The judgment is affirmed.

SIMEONE, C. J., and NORWIN D. HOUSER, Special Judge, concur.