**EXECUTIVE JET MANAGEMENT &
PILOT SERVICE, INC.,
Appellant-Respondent,**

v.

**James J. SCOTT, a/k/a Josef Scott,
Respondent-Appellant.**

**No. WD 31125.**

Missouri Court of Appeals,
Western District.

Dec. 22, 1981.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
Jan. 26, 1982.

Application to Transfer Denied
March 16, 1982.

Robert M. Sommers, John F. Payne, Kansas City, for appellant-respondent Executive Jet Management & Pilot Service, Inc.

Charles C. Shafer, Jr., Charles C. Shafer III, Kansas City, for respondent-appellant Scott.

Before CLARK, P. J., and PRITCHARD and WASSERSTROM, JJ.

CLARK, Judge.

This case presents cross appeals by the respective parties from a multicount judgment on claims and counterclaims tried in part to a jury and in part to the court. Statement and analysis of the points on appeal must necessarily be preceded by a description of the claims, the content of the verdicts and a resumé of facts gleaned from some 500 pages of transcript.

Suit by Executive Jet Management & Pilot Service, Inc. was brought against James J. Scott in three counts centering on the maintenance, use and sale of an Aero Commander airplane owned by Scott. In the first count, Executive Jet sought payment on an account for storage, fuel and repairs to the plane. In the second count, a claim was made for a commission alleged to be due for services in negotiating a sale of the plane. The last count was in replevin for two automobiles transferred as an adjunct to the airplane sale.

Scott filed counterclaims and cross claims. In his counterclaim, Count I and Count IV, he asked an accounting and damages for the alleged use by Executive Jet of Scott's plane in rental service. Count II was for an insurance premium refund payment converted by Executive Jet and Count III was for recovery of the certificates of title to the automobiles in Scott's possession, the subject of Executive Jet's replevin action. The last count was for actual and punitive damages against Roy Horridge, a principal in Executive Jet.

All counts except the replevin actions for the cars and the titles were tried to a jury with the following result: Executive Jet was awarded $9733.94 on Count I and $15,-000.00 on Count II. Scott was awarded $7500.00 on his Count I counterclaim, $2050.00 on Count II and failed in his claim against Horridge on Count IV. The court, in a bench trial of the dispute over the automobiles, found in favor of Scott entitling him to retain the cars and requiring Executive Jet to deliver the titles.

Scott's appeal presents seven points of asserted trial error combined for opinion discussion as follows: (a) Instruction error (b) Newly discovered evidence (c) Default of Executive Jet's status to sue, and (d) Prejudicial witness comment. Executive Jet in its appeal contends that disposition of the replevin claims finds no support in the evidence and is against the weight of the evidence.

A somewhat lengthy recitation of the evidence in the case is unavoidable because the details of the several transactions between the parties are both extensive and essential to discussion of the points on appeal. That evidence, derived in the main from testimony by Horridge and Scott, was frequently and irreconcilably in conflict.

Executive Jet, a Missouri corporation, was engaged in the business of operating a used car agency, an aircraft leasing company and an air charter business. Roy Horridge was president of the company. In 1974, Scott purchased the Aero Commander from Kansas City Flying Service and, at the request of the latter, Horridge provided Scott some in-flight instruction as to operation of the craft. From this acquaintanceship, Horridge secured Scott's commission to handle maintenance of the airplane and the bills for expenses so incurred came to Executive Jet on the understanding that Scott would provide reimbursement.

In late 1974, Scott and Horridge agreed on an arrangement for Executive Jet to lease the airplane, apparently to customers of Executive Jet, on a fixed payment to

Scott per flight hour. While the existence of such an agreement was not disputed, Executive Jet in its Count I claimed money due from Scott for expenses incurred in storing and servicing the plane. Scott, in his Count I counterclaim, asserted that he had not been paid fully for the hourly usage charge. By its verdicts, the jury netted out the respective claims, somewhat to the credit of Executive Jet, awarding plaintiff $9733.94 as reimbursable expenses offset by $7500.00 granted Scott for unpaid lease rentals.

The major controversy, to some extent associated with usage of the plane by Executive Jet, centered on an endeavor by Executive Jet to dispose of the airplane for the account of Scott. While Scott denied initiating any effort to sell or lease the plane, there was concurrence upon the fact that Horridge did negotiate with one Louis Krueger a proposal for an "Aircraft Purchase Order with Lease Option," which Scott accepted and signed. Under the terms of that document, Krueger Construction Company of Houston, Texas agreed to lease the Aero Commander for sixty months at a rental of $4226.50 per month or to purchase it for $190,000.00, the election to be made within thirty days from the contract date. The agreement also provided for a security deposit of $15,000.00 to be paid by Krueger at the signing of the contract.

All concerned agreed the written document did not accurately describe the agreement, but each recounted a different version of the transaction. According to Horridge, repairs and modifications made to the plane before delivery were to be at the seller's expense, Krueger was to be paid $25,000.00 in cash as allowance for the purchase of a spare engine and the $15,000.00 security deposit was fictitious and never was intended to be paid. Horridge described the deposit as a device intended to make the contract "marketable."

Scott denied knowledge of any agreement to pay Krueger for spare equipment, to waive the security deposit or to assume the expense for repairs and modifications.

He testified that before the transaction was actually closed, Horridge requested $5000.00 because of renegotiation of the contract with Krueger, at which point Scott instructed Horridge to cancel the agreement. Before Scott could personally intervene, however, the airplane had been turned over to Krueger. Both Horridge and Scott agreed that Horridge was to receive $15,000.00 as a sale commission, but Scott claimed this was to be satisfied from the security deposit.

According to Krueger, who testified by deposition, the $15,000.00 security deposit and the $25,000.00 allowance for spare parts were actually included in the agreement to inflate the selling price which was much less than the $190,000.00 stated. The purpose served by exaggerating the sale price was not indicated nor was any witness asked why the $25,000.00 allowance was not credited against lease rentals. Krueger also testified that in place of the $25,000.00 to have been paid in cash, he received from Executive Jet payment of $5000.00 and a new Cadillac automobile. Scott was to pay him an additional $7500.00 in thirty days but he never received the money. Only one of the monthly lease payments was made by Krueger. The record is silent as to eventual disposition of the airplane, the Cadillac car and the lease contract. Suffice it to say that for all which appears in the evidence here, Krueger paid $4226.50 and received in turn the airplane, the Cadillac and $5000.00 cash.

The dispute over the other automobiles, a 1975 Lamborghini and a 1976 Cadillac (a different car from that delivered to Krueger), involved the alleged obligation for $25,000.00 to be paid Krueger for the spare airplane engine. According to Horridge, Scott did not have the cash to meet this item in the airplane transaction and he asked Horridge to advance it for his account. Such was Horridge's explanation for the $5000.00 payment to Krueger and the delivery of the new Cadillac, both supplied by Executive Jet. Horridge testified that in return for this advance, Scott pledged the Cadillac and the Lamborghini as collateral. Scott, to the contrary, denied

not only any pledge of the cars but disclaimed both knowledge of and liability for any debt to Krueger or to Executive Jet for which any collateral would have been appropriate.

At all relevant times, the certificates of title to the Cadillac and the Lamborghini showed ownership in Civic Center Auto Sales, a registered fictitious name of Executive Jet. All parties agreed that Scott had paid for the cars. Horridge testified the cars were titled in the name of the dealership so that Scott could buy cars at wholesale prices and avoid paying sales taxes and license fees. The judgment directing Executive Jet to deliver the title certificates to Scott made no mention of the ownership question and did not direct any endorsement of the title certificates by the record owner, Civic Center Auto Sales.

Scott's post-trial motions included a request for a new trial because of newly discovered evidence. That motion was supported by the evidence of an arson investigator with the Kansas City Fire Department. Horridge had earlier testified that invoices substantiating claimed expenses for servicing Scott's airplane had been destroyed in a fire at Horridge's place of business. The testimony of the arson investigator was that he had been at the scene of the fire and had inspected various file cabinets and had found the records scorched but legible. The motions were overruled.

## SCOTT'S APPEAL

### INSTRUCTION ERROR

In his first points, Scott contends the verdict directing and damage instructions submitted on behalf of Executive Jet were deficient, deviated from the cause of action pleaded and were a source of confusion to the jury. Discussion of these points requires that the instructions be set out as given:

### INSTRUCTION NO. 3

Your verdict must be for the plaintiff on Count I of plaintiff's claim if you believe:

First, that defendant agreed to reimburse plaintiff for expenses incurred in the maintenance, repair and lease of defendant's aircraft, and

Second, defendant failed to reimburse plaintiff for expenses plaintiff incurred in the maintenance, repair and lease of defendant's aircraft, and

Third, plaintiff was thereby damaged.

### INSTRUCTION NO. 5

If you find the issues in favor of plaintiff on Count I of plaintiff's claim for damages, then you must award the plaintiff such sum as you believe will fairly and justly compensate the plaintiff for any damages you believe it sustained as a direct result of the occurrence mentioned in the evidence as submitted in Instruction No. 3.

### INSTRUCTION NO. 6

Your verdict must be for plaintiff on Count II of plaintiff's claim if you believe:

First, that defendant agreed to pay plaintiff a $15,000.00 commission for obtaining the "Purchase Order With Lease Option" on defendant's aircraft, and

Second, defendant failed to pay plaintiff the $15,000.00 commission, and

Third, plaintiff was thereby damaged.

### INSTRUCTION NO. 9

If you find the issues in favor of plaintiff on Count II of plaintiff's claim for damages, then you must award the plaintiff such sum as you believe will fairly and justly compensate the plaintiff for any damages you believe it sustained as a direct result of the occurrence mentioned in the evidence as submitted in Instruction No. 6.

Scott first contends that the phrase in instructions 5 and 9, " * * * as a direct result of the occurrence mentioned in the evidence as submitted in Instruction No. __," failed to comply with paragraph 3 of Notes on Use following MAI No. 4.01.

Scott suggests that the jury was not given the requisite direction as to the "occurrence" to be considered and that the instructions should properly have employed the phrase " * * * as a direct result of the conduct of defendant as submitted in Instruction No. __ for which you find defendant liable." As authority, Scott cites *Vest v. City National Bank and Trust Co.*, 470 S.W.2d 518 (Mo.1971).

The *Vest* case involved multiple injuries to the plaintiff sustained in a fall and a resultant malpractice claim against attending physicians for various phases of treatment and for neglect and abandonment of the patient. The damage instruction referred only to "the occurrence mentioned in the evidence." The instruction was held to be erroneous because plaintiff's damages could have been found by the jury to be the consequence of any of various occurrences, some of which were not attributable to the defendants, or were the result of an occurrence for which the defendants were not liable. No such multiplicity of events and potential attribution of liability are found here.

■ Undoubtedly, the facts of the case required a modification of MAI No. 4.01 to inform the jury what "occurrence" was to be considered as the source of the damage recoverable from the defendant. As was stated in *Smith v. Courter*, 575 S.W.2d 199, 205 (Mo.App.1978), "Where a modification is required under the Notes on Use or the existing case law, the question becomes one of the propriety of the modification. The issue then becomes one of whether the particular modification made was prejudicial to any right of the defendants. In that connection, the instructions must be read as a whole."

■ By reference to the verdict directing instructions which themselves concerned only particular business transactions between plaintiff and defendant, there can be no reasonable argument that the jury was not adequately informed both as to the source of plaintiff's claim and the basis for defendant's liability. It is perhaps true that the modification suggested by Scott

would have been a preferable and more complete form adapted to this case, but we perceive no prejudice to Scott from the instruction which was used. Moreover, Scott himself in his measure of damage instructions followed the same form used in Instructions 5 and 9 quoted above. A party cannot complain of error in the instructions of an opposing party which is common to the instructions of both parties. *McDonald v. Plas*, 401 S.W.2d 929, 932 (Mo.App.1966); *Layton v. Palmer*, 309 S.W.2d 561, 570 (Mo. 1958).

Scott next argues that the Count I claim in the petition of Executive Jet sought damages in part referable to the sale of the aircraft whereas Instruction 3 described the transaction as a lease of the aircraft. This deviation he notes is repeated in Instruction 6 seeking payment of the commission. The variance between the pleading on the one hand and the proof and instruction on the other was, Scott argues, confusing to the jury.

■ Whether the agreement with Krueger constituted a sale or a lease was perhaps open to question, the contract document itself containing provisions for both alternatives. In any event, there was only one such transaction described in the evidence. Instructions are to be considered as a whole and as they may be received and reviewed by jurors of reasonable intelligence. *McGowan v. Hoffman*, 609 S.W.2d 160, 164 (Mo.App.1980). It is not conceivable that jurors of normal abilities could have been misled or confused by a question of whether the agreement with Krueger was a sale or a lease, particularly because, by Horridge's testimony, he was entitled to payment of expenses and a commission in either event. The point is entirely without merit.

■ Scott next asserts Instruction 5 was erroneous and prejudicial because plaintiff's pleaded theory of recovery was an action on account whereas Instruction 5 is appropriate to an action for breach of contract. This allegation of error was not presented to the trial court and was not included in

Scott's new trial motion. The point is therefore not preserved for appellate review. *Robinson v. St. John's Medical Center, Joplin*, 508 S.W.2d 7, 11 (Mo.App.1974); *Bower v. Hog Builders, Inc.*, 461 S.W.2d 784, 798 (Mo.1970). Scott requests that the contention be considered under "plain error" authority.

■ While the circumstances here can scarcely be characterized as having engendered hatred, passion or prejudice resulting in manifest injustice or a miscarriage of justice, the requisite prelude to plain error review, *Sherpy v. Bilyeu*, 608 S.W.2d 521, 523 (Mo.App.1980), the fact is that the instruction was in conformity with the evidence adduced at trial. Executive Jet's petition in Count I did allege that Scott had opened an account for aircraft maintenance expense, but the evidence favorable to plaintiff's claim was of oral bilateral contract agreements between Scott and Horridge changed in various particulars from time to time. The condensed review of that evidence recounted above is sufficient to demonstrate that plaintiff's cause of action could hardly be characterized as a suit on account.

■ A party is entitled to an instruction on issues which have been tried voluntarily as by implied consent of the parties so that the issues are treated as though raised by the pleadings. *S. P. Personnel Associates of San Antonio, Inc. v. Hospital Building & Equipment Co., Inc.*, 525 S.W.2d 345, 350 (Mo.App.1975). Where an issue is tried without objection and is included in the verdict directing instruction, the petition is deemed to have been amended accordingly. *State ex rel. Paden v. Carrel*, 597 S.W.2d 167, 176 (Mo.App.1979).

The instruction in question was in conformity with the evidence received without objection and was properly given.

In a further attack on the instructions, Scott contends Instruction No. 6, the verdict director for recovery by Executive Jet of a commission on the airplane lease/purchase, did not include the elements required under MAI 26.06, postulated a theory of recovery not pleaded and conflicted with Instruction No. 8. In support of the point, he contends there was no proof of any independent agreement by Scott to pay a commission in any specified amount, only acquiescence by Scott in retention by Horridge of the security deposit. He also argues that Instruction No. 6 and Instruction No. 8 confused the jury because the former used the phrase "for obtaining the purchase order" and the latter used the phrase "for producing a purchaser-lessor" in describing the services performed by Executive Jet. Again, the detail of trial evidence is pertinent.

By his own testimony, Scott acknowledged his agreement that Executive Jet be paid a commission of $15,000.00, albeit without the actual transfer of funds through Scott. It was his evidence that he intended to give Horridge a check for $15,000.00 upon receipt of the security deposit, but agreed to retention of the deposit by Horridge when informed by Horridge that the payment had been made by Krueger. The only real dispute on this subject was over Scott's knowledge concerning the actual terms of the agreement by Krueger. Both Horridge and Krueger confirmed that the security deposit was never paid and was not intended to be paid. Horridge testified that Scott, too, was fully aware of the arrangement and thus could never have believed the commission debt was satisfied from the non-existent deposit. In short, the evidence on behalf of Executive Jet was that Scott agreed to pay a commission of $15,000.00 and did not do so.

■ In considering whether an instruction was supported by the evidence, the appellate court views the evidence in the light most favorable to the offering party, giving that party the benefit of all favorable inferences reasonably drawn therefrom and disregarding evidence to the contrary. *Stanfill v. City of Richmond Heights*, 605 S.W.2d 501, 502 (Mo.App.1979). On plaintiff's evidence here, the jury was entitled to find, as submitted in Instruction No. 6, that Scott agreed to pay a commission of $15,000.00 and did not do so. There

was no obligation on plaintiff to hypothesize in its verdict director Scott's theory that the commission debt was contingent upon receipt of a security deposit only he believed to be an element of the transaction.

 As to the differences between Instructions 6 and 8, we cannot agree that jurors of ordinary intelligence would have been misled by the interchangeable use of the terms "purchase order" and "purchaser-lessor." Juries are composed of ordinarily intelligent persons who should be credited with having common sense and an average understanding of our language. *Collier v. Roth*, 515 S.W.2d 829, 837 (Mo.App.1974). The test for determining the correctness of an instruction rests in whether the average juror will correctly understand therefrom the applicable rules of law. *Beck v. Modern American Life Insurance Co.*, 589 S.W.2d 98, 103 (Mo.App.1979).

As noted earlier, the correct label for the transaction with Krueger is not easily found. Whatever the title applied, however, Scott has not demonstrated that the outcome of the case was or could have been materially affected by describing Krueger as a lessee or a purchaser or by identifying the agreement as one for a lease or purchase. There was only one transaction to which the claimed commission was applicable and the controlling law was understandably set out in the instructions. The contention by Scott to the contrary is without merit.

 Scott next complains that Instruction No. 8 should not have been given because the plaintiff was thereby afforded a second verdict directing instruction. That instruction was in the following form:

### INSTRUCTION NO. 8

You are informed that in order for the plaintiff to recover on his claim for the commission of $15,000.00, it is only necessary that its efforts were the efficient and procuring cause for producing a purchaser-lessor who executed the "Purchase Order with Lease Option" mentioned in

evidence, and this is true even though the lease of the Aero Commander Aircraft was subsequently breached.

Instruction No. 8 is not in MAI but was patterned after an instruction given in *Kelly v. Craigmiles*, 460 S.W.2d 577 (Mo.1970), a case in which the plaintiff sued for payment of a real estate sale commission. There, the defendant made essentially the same contention which Scott levels here. The court expressly held in *Kelly* that the instruction was a cautionary instruction and not a verdict director and was appropriate to inform the jury that the signing of the contract generated the obligation to pay the commission irrespective of whether the transaction was consummated.

In the present case, Scott did not deny signing the Aircraft Purchase Order with Lease Option nor did he dispute an agreement, on some terms, to pay Executive Jet a commission for services. Because other evidence that Krueger did not pay the security deposit and that Scott and Horridge were involved in collateral disputes could well have confused the jury about the controlling question on the claim for the commission, Executive Jet was entitled to the instruction clarifying this aspect of the case.

 Scott also raises five additional objections to Instruction No. 8 contending the language was imprecise, the choice of words was inappropriate and the meaning was uncertain. In determining the sufficiency of an instruction, the court should not be hypertechnical in requiring grammatical perfection, the use of certain words or phrases, or any particular arrangement or form of language, but should be concerned with the meaning of the instructions to a jury of ordinarily intelligent laymen. *Apex Oil Co. v. Beldner*, 567 S.W.2d 336, 339 (Mo.App.1978). An appropriate non-MAI instruction need only be brief, simple, impartial and nonargumentative and the ultimate test of propriety of such an instruction is whether it follows the substantive law and is readily understandable by a jury composed of ordinary people. *Huff v. Union Electric Co.*, 598 S.W.2d 503, 516 (Mo.App.1980); Rule 70.02(e).

Instruction No. 8 correctly stated the substantive law, it was a cautionary instruction to which the plaintiff was entitled and the language of the instruction was not objectionable as a source of confusion or prejudice.

In his final challenge to the plaintiff's instructions, Scott notes a discrepancy between his counterclaim verdict directing Instruction No. 15 and plaintiff's converse, Instruction No. 16. In the former, Scott postulated his claim that Executive Jet had not paid for hourly use of Scott's plane between September 1974 and December 31, 1975. The converse mistakenly used the year 1976 in place of 1975. Scott also objects that Instruction No. 16 was not in literal compliance with MAI 33.13.

The verdict director and the converse are to be read together to determine if the deviant instruction resulted in prejudice. *Conger v. Queen City Food & Vending, Inc.,* 591 S.W.2d 161, 164 (Mo.App. 1979). Absolute perfection is not the test. *Hawkins v. Great Central Insurance Co.,* 509 S.W.2d 477, 478 (Mo.App.1974). The test as to whether or not the variance in language between the verdict director and the converse is significant is whether the same legal theory is contained in both instructions. *Apex Oil Co. v. Beldner, supra,* 567 S.W.2d at 339.

The substitution of the later year in the converse instruction was obviously a typographical error, but even if not seen as such by the jury, the mistake prejudiced Executive Jet, not Scott. As literally stated, the converse imposed upon Executive Jet a liability to compensate Scott for an additional year's usage of the plane, a period of time after the plane had been turned over to Krueger. The variance between the verdict director and the converse did not affect any legal theory in the case and Scott has shown no prejudice from the mistaken reference to the incorrect year.

Scott also argues that Instruction No. 16 was in error because the phrase "Count IV of Defendant's Amended Counterclaim" was not more particularly identified and because the instruction conversed only one element of Scott's verdict directing instruction rather than following the language of MAI 33.13. Suffice it to say that reference to the counterclaim was in the same language which Scott used in his instruction. A party cannot complain of an instruction which converses a proposition in the language the party himself used. *Beard v. Jackson,* 502 S.W.2d 416, 419 (Mo. App.1973). As to the variance from MAI 33.13, the use of a general converse is not obligatory. A party may exactly converse his opponent's submission, or he may converse any of the elements essential to that party's recovery. *Wims v. Bi-State Development Agency,* 484 S.W.2d 323 (Mo.banc 1972).

## NEWLY DISCOVERED EVIDENCE

Plaintiff's Count I claim was for expenses in the maintenance, storage and fueling of Scott's airplane. The theory of recovery was an oral contract agreement by Scott to reimburse Executive Jet for these items. Detailed proof depended on an itemization of the transactions and the evidence Horridge presented consisted of ledger sheets maintained by him in the regular conduct of Executive Jet's business. Some, but not all, entries were supported by invoices and other documentation. According to Horridge, the remaining records which would have supported the ledger entries had been destroyed in a fire at Horridge's place of business.

In a post-trial motion, Scott contended that newly discovered evidence cast doubt on the truthfulness of Horridge's account of records lost in the fire. To support this contention, he produced evidence from William Kegin, chief arson investigator for the Kansas City Fire Department. Kegin testified that he had been present at the scene of the fire, had looked into file cabinets both inside and outside the premises and had observed the records in the cabinets to be damaged but legible. On the basis of this proof, Scott contends he was entitled to a new trial and the trial court abused its discretion in failing to grant the relief.

It is generally recognized that a party seeking a new trial on the ground of newly discovered evidence must show: (1) the evidence has come to his knowledge since trial, (2) due diligence would not have uncovered the evidence sooner, (3) the new evidence is so material it would probably produce a different result, (4) the new evidence is not cumulative, (5) the affidavit of the witness must be produced or its absence accounted for, and (6) the object of the evidence is not to impeach the character or credit of a witness. *Gehner v. McPherson*, 430 S.W.2d 312 (Mo.App.1968); *Young v. St. Louis Public Service Co.*, 326 S.W.2d 107, 111 (Mo.1959). The grant of a new trial on the ground of newly discovered evidence rests to a large extent on the discretion of the trial judge. *Koenig v. Skaggs*, 400 S.W.2d 63 (Mo.1966). Motions for new trial on the ground of newly discovered evidence are viewed with disfavor and the courts grant such motions as an exception and refuse them as a rule. *Voss v. Wall*, 562 S.W.2d 147 (Mo.App.1978). Motions for new trial on the ground of newly discovered evidence are entertained reluctantly, examined cautiously and construed strictly. *Chapman v. King*, 396 S.W.2d 29 (Mo.App. 1965); *Womack v. McCullough*, 358 S.W.2d 66 (Mo.1962).

Trial in this case was had in December 1978. No later than February of that year, Scott was alerted by answers to interrogatories that records purporting to substantiate the claim for reimbursable maintenance costs had been destroyed in a fire July 29, 1977. Scott made no showing as to why the evidence of arson investigator Kegin derived from his observations at the scene of the fire was not as readily available before trial as it was after trial. Moreover, the evidence cannot be characterized as likely to compel a different result because it did no more than case doubt on the truthfulness of Horridge who said the records were destroyed. The after-trial facts here were not decisive or conclusive in the outcome of the case, there was no showing of diligence in making timely discovery of the evidence and the court did not err in refusing to grant a new trial to receive that evidence.

## THE CORPORATE STATUS OF EXECUTIVE JET

During the progress of trial, while in the course of cross-examination of Horridge, counsel for Scott inquired whether or not Executive Jet was still in existence as a corporation. Horridge disclaimed knowledge one way or the other because he had sold his interest in the company some two years earlier and was neither an officer nor a director. In a side bar conference upon objection to this line of inquiry, Scott's attorney stated he had recently received information that the corporate charter of Executive Jet had been forfeited "in I believe about February of 1977." He then moved for substitution of the statutory trustees in the pending action. The motion was denied and Scott now claims error in this ruling.

The petition in this case filed by Executive Jet September 20, 1976 alleged plaintiff to be a Missouri corporation with its business office in Jackson County. Scott's answer, not amended in this detail thereafter, stated defendant was without sufficient information to form a belief as to the truth of this and other allegations of the petition. Apart from the motion for substitution, no leave was sought by Scott to add any pleading raising the corporate status issue and no evidence appears in this record substantiating counsel's claim that Executive Jet had lost its corporate charter or, if so, that the forfeiture had not been later rescinded. Scott now relies on the provisions of §§ 351.525 and 351.535, RSMo 1978 and *Clark Estate Co. v. Gentry*, 362 Mo. 80, 240 S.W.2d 124 (1951), *cert. denied*, 342 U.S. 868, 72 S.Ct. 109, 96 L.Ed. 653 (1951) as authority for his contention that the court should have suspended proceedings pending substitution of statutory trustees in place of Executive Jet.

The first and obvious deficiency in Scott's argument is the absence of any proof that the corporate charter of Executive Jet had been forfeited. Statements of counsel are not evidence, *Davis v. City of Independence*, 404 S.W.2d 718 (Mo.banc

1966) nor are assertions in a motion for new trial, *City of Hannibal v. Winchester*, 360 S.W.2d 371, 374 (Mo.App.1962). Moreover, the forfeiture alleged to have been recorded sometime in February 1977 was not represented as being a current condition and, for all that appears, could have been remedied by rescission of forfeiture, then or later. Scott errs in assuming that the bare statement by counsel was enough to establish a factual basis for his contention when neither the witness nor plaintiff's counsel expressed knowledge of the fact asserted and did not directly or by inference so stipulate. The point fails for absence of proof.

Even were it assumed, however, that the representation by Scott's attorney was enough without documentation, the issue was waived when not raised by any pleading. Rule 55.13 provides that averment of the capacity of a party to sue is sufficient unless the issue is raised by an opponent by specific negative averment. Rule 55.27(a) authorizes optional pleading of the defense that plaintiff does not have the legal capacity to sue by motion, but under Rule 55.27(g), if not presented by motion or responsive pleading, the defense is waived. The petition allegation of corporate status to sue is sufficient, absent a pleading to contest the allegation, because complaince with the law is presumed and failure to comply is purely a matter of defense. *Weldon, Williams & Lick, Inc. v. L. B. Poultry Co.*, 537 S.W.2d 868 (Mo.App. 1976). To be available as a defense, plaintiff's incapacity to sue should be pleaded in the answer. *Scientific American Club v. Horchitz*, 128 Mo.App. 575, 106 S.W. 1117, 1118 (1907). Scott did not question the legal status of Executive Jet by specific averment in any pleading, he did not seek leave to amend any pleading to raise the defense and he therefore waived the defense.

Scott can find no aid in the pleading of his answer which alleged insufficient information to form a belief that Executive Jet was a Missouri corporation with status to maintain suit. Even if such a responsive pleading is regarded as a general denial, it is not a specific negative averment which Rule 55.13 requires. A general denial does not put in issue, but rather admits, the capacity in which a plaintiff sues. *Schneider v. Best Truck Lines, Inc.*, 472 S.W.2d 655, 659 (Mo.App.1971).

## PREJUDICIAL WITNESS COMMENT

In the last point of his appeal, Scott contends that his motion for mistrial should have been granted when Horridge, while testifying on cross-examination volunteered the observation that Scott was a "millionaire businessman." Scott's counsel promptly objected, the objection was sustained and the jury was instructed to disregard the comment. Counsel then moved for a mistrial which was denied. Scott argues that the only curative remedy was a mistrial.

When a witness unexpectedly volunteers an inadmissible statement, the action called for rests largely within the discretion of the trial court who must evaluate the situation and ascertain if some remedy short of a mistrial will cure the error. Appellate review of the trial court's decision is to verify that the trial court has not abused its discretion. *State v. McClain*, 531 S.W.2d 40, 44–45 (Mo.App.1975). A declaration of a mistrial is the most drastic remedy for trial error and should be granted only in those cases where the error is so prejudicial that its effect can be excised in no other way. *Furlow v. Laclede Cab Co.*, 502 S.W.2d 373 (Mo.App.1973).

We have reviewed the circumstances here and find no abuse of discretion by the trial court in refusing Scott's motion for a mistrial.

## EXECUTIVE JET'S APPEAL

The single point raised in the appeal by Executive Jet challenges that portion of the judgment entered on bench trial of the replevin cause. In Count III of its amended petition, Executive Jet sought to recover possession of the Cadillac and Lamborghini automobile from Scott on the basis that Executive Jet held title to the cars as collateral for advances made for Scott's account.

Scott denied any pledge of the cars and sought to recover the title certificate from the possession of Executive Jet. By its judgment, the trial court found Scott had not agreed to secure indebtedness due Executive Jet by giving title to the cars and ordered that Scott recover from Executive Jet " * * * possession of the title certificates * * *."

Executive Jet now asserts that the judgment was unsupported by substantial evidence and was against the weight of the evidence. The contention is correct, but not for the reasons Executive Jet assigns.

The dispute litigated by the parties was whether Scott had pledged the cars in consideration for the intervention by Executive Jet in the transaction with Krueger. According to Horridge, Scott was informed of the necessity to furnish Krueger a spare engine for the Aero Commander or pay him $25,000.00 so he could obtain one. Scott, being then temporarily short of funds, requested assistance, at which point Horridge, on behalf of Executive Jet, furnished a new Cadillac and $5000.00 to placate Krueger until Scott could settle up thirty days later. It was Horridge's testimony that Scott agreed the two cars would be security for reimbursement to Executive Jet of the advance. Scott denied any knowledge of the transaction with Krueger, beyond the written agreement, and denied a pledge of the cars.

While the evidence sharply conflicted on the question of whether any collateral pledge was made and, of equal significance, whether any debt existed, some facts were undisputed. Among these was the record title ownership by Executive Jet in the two cars in question. The certificates of title were in evidence and each plainly showed the registered owner of the vehicle to be Civic Center Auto Sales, a fictitious name under which Executive Jet conducted an automobile business. Also agreed was the fact that Scott had supplied the purchase money for each of the cars. It was acknowledged that Scott used the cars but had the registration recorded in the name of Civic Center.

It is at once apparent that Executive Jet was entitled to judgment on its petition to replevin the cars, not because of any pledge of the cars by Scott, but because Executive Jet, through the entity of Civic Center Auto Sales, owned the cars. The dispute over a pledge of the cars was irrelevant. Scott could not have pledged the cars because he did not own them. Equally apparent is the ineffectiveness of the judgment to resolve the controversy. While physical delivery of the title certificates to Scott was ordered, they were worthless to him under the registered ownership of Civic Center and the judgment made no provision for and Civic Center was under no duty to endorse the titles. Neither party has raised the ownership question and the record yields no clue as to the condition or location of the vehicles.

In this court-tried case, we defer to its factual determination on the issue litigated and do not undertake a de novo review of whether the evidence supported the claim of Executive Jet to a security interest in the cars for advances made or the denial by Scott of any debt or pledge of collateral. On well recognized authority, that is not the function of the appellate court. *D. S. v. H. T. H.*, 600 S.W.2d 698, 700 (Mo.App. 1980). On the other hand, the law applicable to the action by Executive Jet to replevin the cars to which it held title is plain.

Section 301.200, RSMo 1978 exempts automobile dealers from the requirement that they have in hand certificates of title to all cars in their possession if the car was acquired from the manufacturer. Otherwise, the dealer must have a certificate showing title registered in the dealer or in his immediate vendor. Here, the record does not disclose whether Civic Center Auto Sales acquired the two cars from the manufacturer, but registration of the cars in Civic Center's name at least dispels any possibility that Civic Center held the cars under the non-title exemption for dealer sale of a new car.

Once a certificate of title to a motor vehicle has been issued by the director of revenue, that car may no longer

be sold and the title recorded as in the sale of a new car. Section 301.210, RSMo 1978 requires that transfer of ownership be by assignment and delivery of the title certificate and absent such certificate assignment, the purported sale is unlawful, fraudulent and void. Absolute, technical compliance with the statute is required. If there is failure to observe the title and registration conditions, the intended buyer of the car acquires no ownership even though he acted in complete good faith. *Allstate Insurance Co. v. Northwestern National Insurance Co.*, 581 S.W.2d 596, 602 (Mo.App.1979). Whatever else may have been the relative merits of disputes between the parties, on the issue alone of right to possession of the cars, Executive Jet was entitled to prevail. Executive Jet was the registered owner of and had legal title to the vehicles, regardless of any claim Scott may have had because of money paid to buy the cars.

■ Where the record on appeal shows that a party has misconceived his remedy on his rights, an appellate court has discretion to remand the case for further proceedings. *State ex rel. Reid v. Kemp*, 574 S.W.2d 695 (Mo.App.1978); *Wile v. Donovan*, 538 S.W.2d 906, 909 (Mo.App.1976); *Stouse v. Stouse*, 270 S.W.2d 822, 825 (Mo. 1954).

Ownership of the cars by Executive Jet compels reversal of the judgment which denied the replevin claim of Executive Jet for possession. Scott, however, is entitled to an opportunity to assert whatever claim he may have by reason of furnishing the purchase money for the cars, if that be the fact, although the scheme to avoid sales tax and license fees may pose some impediment to any recourse to equitable relief. So, too, may the claim of Executive Jet be lodged in another alternative depending on the current location and condition of the vehicles. On this phase of the dispute, orderly disposition of the case requires that the cause be remanded for amendment of the pleadings and additional evidence as the parties may consider appropriate.

The judgment is affirmed as to Counts I and II of plaintiff's petition and as to Counts I, II and IV of defendant's counterclaim. The judgment is reversed as to Count III of plaintiff's claim and Count III of defendant's counterclaim and the cause is remanded for further proceedings consistent with this opinion.

All concur.